[No. B085770. Second Dist., Div. One. June 27, 1996.]

GEORGE WEINBAUM et al., Plaintiffs and Appellants, v.
GOLDFARB, WHITMAN & COHEN et al., Defendants and Respondents.

**COUNSEL**

Horn & Loomis, Richard H. Loomis, Rummonds, Williams & Mair, Rummonds, Williams, Waltz & Mair and James S. Rummonds for Plaintiffs and Appellants.

Katz, Hoyt, Seigel & Kapor, Scott H. Jacobs, Russell L. Allyn, Levy, Small & Lallas, Tom Lallas, Mark Hurwitz, Verano & Verano, Hugh T. Verano, Jr., and Ron R. Goldie for Defendants and Respondents.

**OPINION**

**VOGEL (Miriam A.), J.**—The question in this case is whether an employee discharged in violation of public policy may seek damages on a conspiracy

theory from third parties who conspired with his employer to cause the employee's wrongful termination. Our answer is no, because a third party who is not and never has been the plaintiff's employer cannot be boot-strapped by conspiracy into tort liability for a wrong he is legally incapable of committing.

### FACTS[1]

George Weinbaum and Ash Amarshi (collectively Weinbaum), both audit managers, were fired by their employer, Goldfarb, Whitman & Cohen. Weinbaum sued Goldfarb and, in his second amended complaint, added as defendants Republic Factors Corporation[2] and several individuals (Marvin Winkler, Robert F. Driver, James Jenks, and Thomas Hilb)[3] who had guaranteed loans made by Republic Bank and Republic Factors to six of Goldfarb's corporate clients (collectively, the Republic defendants). In addition to Weinbaum's garden variety claims against Goldfarb (simple wrongful termination, breach of contract, breach of the implied covenant of good faith and fair dealing, and wrongful termination in violation of public policy), Weinbaum alleged two conspiracy counts against the Republic defendants, one entitled "conspiracy to suppress facts and to falsify financial reports, and aiding and abetting the suppression of facts and falsification of financial reports," the other entitled "conspiracy to wrongfully terminate in violation of public policy and aiding and abetting thereof."

The essence of Weinbaum's claim is that Goldfarb and the Republic defendants were participants in an unlawful scheme to mask the insolvencies of six corporations represented by Goldfarb, to "remove assets" from those

---

[1]This appeal reaches us after demurrers to the plaintiffs' complaint were sustained without leave to amend. As a result, our statement of facts is taken from the operative pleading and assumes the truth of the facts alleged. (*Moore* v. *Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479, 16 A.L.R.5th 903].)

[2]The second amended complaint alleges that Republic Factors' acts were ratified by its parent corporation, Republic Bank of New York. Although the Bank was not named in that pleading, it was apparently added by a subsequent amendment. Its motion to quash on the ground that it does not conduct business in California and did not control Republic Factors was granted and no appeal was taken from that order. When Weinbaum's opening brief on this appeal addressed the merits of the motion to quash, the Bank moved to dismiss the appeal as to it on the ground that the appeal from the demurrer dismissal did not encompass the motion to quash. We agreed and on March 19, 1996, the appeal was dismissed as to Republic New York Corporation and Republic National Bank of New York. (Code Civ. Proc., § 904.1, subd. (a)(3) [an order granting a motion to quash is an appealable order]; Cal. Rules of Court, rule 2; *Sharp* v. *Union Pacific R.R. Co.* (1992) 8 Cal.App.4th 357, 361 [9 Cal.Rptr.2d 925] [the Court of Appeal is without jurisdiction to consider an untimely appeal].)

[3]There are other individuals named as defendants (George Sabbagh and Dianne Skilling) but they are not parties to this appeal.

corporations in contemplation of their apparently imminent bankruptcies (in violation of 18 U.S.C. § 152), and to otherwise misrepresent the financial condition of those corporations. Allegedly, Republic Bank and Republic Factor benefited from this scheme by receiving approximately $12 million in preferential payments from the insolvent corporations, and by receiving security interests in assets belonging to those corporations, benefits made possible by Goldfarb's concealment of its clients' insolvencies. The other Republic defendants who were guarantors of loans made by the bank and the factor to the insolvent corporations allegedly benefited by having their personal guarantees reduced.[4]

Weinbaum alleges that, to ensure the success of this conspiracy, Goldfarb had to "violate professional standards" and "issue false financial statements and projections" in order to "fraudulently induce" the creditors of the six insolvent corporations to continue to extend credit to the corporations, which the creditors did. To that end, Weinbaum was directed by Goldfarb, his employer, to participate in the preparation of the false financial and accounting reports. When Weinbaum objected, he was warned that he "needed to support Goldfarb's actions by going along" with the preparation of the false documents and, when he continued to object, he was "seen as obstructing the success of the conspiracy" and, "in furtherance of the common design and scheme of the conspiracy," he was fired.

Republic Factor and the four individual Republic defendants demurred to the two conspiracy claims, contending that both counts failed to plead facts sufficient to state a cause of action and that, alternatively, both were barred by limitations.[5] The demurrers were sustained without leave to amend, and Weinbaum appeals from the order of dismissal thereafter entered.

## DISCUSSION

 The question before us is whether a defendant who admittedly was not the plaintiff's employer can be sued for damages for conspiracy to

---

[4]More specifically, Weinbaum alleges that, but for the conspiracy, Republic Bank would have suffered losses of "tens of millions of dollars." As to the individuals, Weinbaum alleges that, for example, Defendant Winkler, an owner and officer of one of the six insolvent clients (American Marking Works), caused his corporation to make "unlawful preferential payments" to Republic Bank and to issue false financial statements and projections (apparently with Goldfarb's assistance), delayed his corporation's bankruptcy despite its apparent insolvency, granted Republic Bank or Republic Factor a security interest in the corporation's inventory to the detriment of the corporation's unsecured creditors, and falsely declared that Goldfarb had no connection to the corporation.

[5]Our conclusion that no cause of action has been pled makes it unnecessary to discuss the statute of limitations issue.

wrongfully terminate the plaintiff's employment in violation of public policy. Because tort liability arising from conspiracy presupposes that the coconspirator *is legally capable of committing the tort* (because he owes a duty to the plaintiff recognized by law and is thus potentially subject to liability for a breach of that duty), we hold that a third party who is *not* (and never was) the plaintiff's employer cannot be liable for conspiracy to wrongfully terminate the plaintiff's employment in violation of public policy.[6]

■ We begin with an examination of the underlying tort. In *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 665-671 [254 Cal.Rptr. 211, 765 P.2d 373], and again in *Lazar* v. *Superior Court* (1996) 12 Cal.4th 631, 646 [49 Cal.Rptr.2d 377, 909 P.2d 981], our Supreme Court confirmed the continuing validity of the *tort* of wrongful discharge in violation of public policy that arises when an employer conditions employment upon required participation in unlawful conduct by the employee. But the fact that an employee discharged in violation of public policy has a tort remedy wholly independent of his express or implied *contractual* relationship with his employer (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at pp. 665-671) does not mean there exists a tort of "wrongful termination in violation of public policy" independent of the duty arising from the employment relationship. To the contrary, the duty on which the tort is based is a creature of the employer-employee relationship, and the breach of that duty is the employer's improper discharge of an employee otherwise terminable at the will or whim of the employer. (*Id.* at p. 665.) There is nothing in *Foley* or in any other case we have found to suggest that this tort imposes a duty of any kind on anyone other than the employer. Certainly, there is no law we know of to support the notion that anyone other than the employer can discharge an employee.

■ With the tort placed in context, we turn to the concept of conspiracy. In *Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503

---

[6]As noted, Weinbaum's second amended complaint alleges two separate conspiracy theories. In addition to the conspiracy to wrongfully terminate his employment in violation of public policy, he alleges a conspiracy "to suppress facts" that is nothing more than a thinly disguised attempt to recover damages for a fraud which, if proved, will establish injury to the unnamed creditors of the insolvent corporations, not Weinbaum (whose only damage arises from the loss of his job). For the reasons discussed in the text and for the additional reason that Weinbaum has no standing to seek damages suffered by someone else (Code Civ. Proc., § 367; *Parker* v. *Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6] ["Where the complaint states a cause of action in someone, but not in the plaintiff, a general demurrer for failure to state a cause of action will be sustained"]; *Killian* v. *Millard* (1991) 228 Cal.App.3d 1601, 1605 [279 Cal.Rptr. 877] ["A real party in interest ordinarily is defined as the person possessing the right sued upon by reason of the substantive law"]), the demurrers to this cause of action were properly sustained.

[28 Cal.Rptr.2d 475, 869 P.2d 454], the Supreme Court explained that, "[s]tanding alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort." (*Id.* at p. 511.) This is so because a " 'bare agreement among two or more persons to harm a third person cannot injure the latter unless and until acts are actually performed pursuant to the agreement. Therefore, it is the acts done and not the conspiracy to do them which should be regarded as the essence of the civil action.' " (*Ibid.*, quoting Note, *Civil Conspiracy and Interference with Contractual Relations* (1975) 8 Loyola L.A. L.Rev. 302, 308, fn. 28.)

Stated differently, the major significance of a conspiracy " ' "lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." ' " (*Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd.*, *supra*, 7 Cal.4th at p. 511, quoting *Doctors' Co.* v. *Superior Court* (1989) 49 Cal.3d 39, 44 [260 Cal.Rptr. 183, 775 P.2d 508].) Thus, *"tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty."* (*Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd.*, *supra*, 7 Cal.4th at p. 511, italics added.)

It is for this reason that a contracting party (who is incapable of interfering with the performance of his own contract) cannot be held liable in tort for conspiracy to interfere with its own contract (*Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd.*, *supra*, 7 Cal.4th at p. 514), that an insurance adjusting firm and its employees (who as agents of the insurer are incapable of conspiring with their corporate principal) cannot be liable as coconspirators for the tortious breach of the covenant of good faith and fair dealing implied in the contract between the insurer and its insured (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 576 [108 Cal.Rptr. 480, 510 P.2d 1032]), that an attorney and an expert witness (who are not bound by the duty imposed by Insurance Code section 790.03) cannot be liable as coconspirators with their insurance company employer for the tortious violation of a statute prohibiting unfair insurance practices (*Doctors' Co.* v. *Superior Court*, *supra*, 49 Cal.3d at p. 44), that agents of an insurer (who are not fiduciaries and have no duty of disclosure) cannot be liable to an insured as coconspirators for a failure to disclose (cf. *Younan* v. *Equifax Inc.* (1980) 111 Cal.App.3d 498, 516-517 [169 Cal.Rptr. 478]), and that a defendant cannot be liable for a conspiracy to commit a tort when by statute the defendant has immunity for the actual tort (*Hardy* v. *Vial* (1957) 48 Cal.2d 577, 583-584 [311 P.2d 494, 66 A.L.R.2d 739] [the "underlying theory of absolute immunity is equally applicable whether the employee acts by himself or with

others who are not immune"]; *McMartin* v. *Children's Institute International* (1989) 212 Cal.App.3d 1393, 1406 [261 Cal.Rptr. 437]).

The result must be the same in the case before us. Weinbaum was employed by Goldfarb, not by any of the Republic defendants, and the Republic defendants are thus legally incapable of committing the tort of wrongful discharge in violation of public policy. As *Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd.*, *supra*, 7 Cal.4th at page 514 teaches, "[t]he invocation of conspiracy does not alter this fundamental allocation of duty. Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity. It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles. [Citations.] Because a [nonemployer] owes no tort duty to refrain [from discharging another's employee in violation of public policy], he or she [or it] cannot be bootstrapped into tort liability by the pejorative plea of conspiracy."

It follows that the demurrers by the nonemployer defendants were properly sustained without leave to amend.

### DISPOSITION

The orders of dismissal are affirmed.

Ortega, Acting P. J., and Masterson, J., concurred.

A petition for a rehearing was denied July 15, 1996, and appellants' petition for review by the Supreme Court was denied September 25, 1996.