Opinion .
 

 CROSKEY, Acting P. J
 

 In this suit for wrongful termination and wrongful infliction of emotional distress, plaintiff Eugene O. Phillips (plaintiff) appeals from a judgment of dismissal entered in favor of the defendants Gemini Moving Specialists (Gemini) and Mark Luni (Luni) after the trial court sustained, without leave to amend, their general demurrers to all causes of action in plaintiff’s complaint. A judgment of dismissal was thereafter filed.
 

 Because we conclude that plaintiff has alleged valid causes of action against his employer for wrongful discharge, and related emotional distress claims, arising from the termination of plaintiff’s employment in violation of fundamental public policy, we hold that the trial court erred in dismissing his complaint as to the defendant Gemini. However, no cause of action for wrongful termination can be stated against the individual defendant Luni and therefore, as to that defendant, the dismissal was proper. Therefore, as to the
 
 *567
 
 defendant Gemini, we will reverse the judgment; as to the defendant Luni, we will affirm.
 

 Background of the Case
 

 1.
 
 The Charging Allegations in the
 
 Complaint
 
 [1]
 

 According to the complaint, defendant Gemini is engaged in the moving and storage business and has its offices in North Hollywood. Defendant Luni is Gemini’s paymaster. Plaintiff began working for Gemini in April 1994 in a “casual employee” position. Plaintiff worked as a packer, working from two to five days a week, with summer being an especially busy time of year for that employment. On October 27, 1995, Gemini assigned to plaintiff the job of driving a moving van from North Hollywood to Manhattan Beach. Because of “a misdirection or misunderstanding in directions given by a service station attendant, the wrong gasoline was put into the van.” When plaintiff attempted to operate the van, the engine failed to start. Plaintiff notified Gemini of the problem and Gemini had the van towed back to its offices, where the offending gasoline was drained from the van’s gas tank. The van was then put back into service.
 

 The cost of towing the van was $70. Gemini asked plaintiff to pay one-half of that sum, and plaintiff agreed, but stated he did not want the $35 taken out of his very next paycheck (due October 31, 1995) because his rent was coming due at that same time. Nevertheless, Gemini deducted $93.75 from plaintiff’s October 31, 1995 paycheck. Thereafter, Gemini refunded $58.75 to plaintiff in the payroll period ending November 15, 1995. Plaintiff never gave written authorization to have any amount of money deducted from his paycheck for the purpose of compensating Gemini for its costs associated with the van problem.
 

 After November 3, 1995, Gemini refused to give plaintiff any more work assignments as a casual mover and packer, even though Gemini continued to employ people in such positions and even though plaintiff was ready, willing, able, and qualified to work in those positions. On December 21, 1995, plaintiff asked Gemini whether it intended to give him casual work in
 
 *568
 
 the future, and why it had stopped giving him such work even though the work was available. Plaintiff also asked Gemini why it made the October 31, 1995, payroll deduction when plaintiff had requested that it not be made. On January 3, 1996, Gemini and Luni informed plaintiff that they were terminating plaintiff’s employment. They admitted the payroll deduction had been carried out without plaintiff’s written consent. Luni’s actions were authorized or ratified by Gemini.
 

 The complaint alleges the act of deducting money from plaintiff’s paycheck is prohibited by provisions of the Labor Code and constitutes an illegal setoff of debts under Code of Civil Procedure section 487.020, subdivision (c). Moreover, it is alleged, plaintiff was discharged from his employment because he questioned defendants about their right to make the payroll deduction and because plaintiff objected to the manner in which the deduction was made. The discharge was retaliatory in nature in that it occurred because plaintiff sought to protect his statutory rights to employment compensation. Finally, the complaint alleges that the defendants’ acts (1) involve a matter of public policy which favors prompt payment of employment compensation for the economic benefit of the worker and his or her family, (2) were intentional and malicious and done for the purpose of causing plaintiff humiliation, anguish and emotional distress, all of which did occur, and (3) were performed with wanton and reckless disregard of their consequences to plaintiff.
 

 2.
 
 Plaintiff’s Causes of Action and Defendants’ Demurrers
 

 The causes of action set forth in the complaint are (1) wrongful termination-breach of public policy, (2) intentional infliction of emotional distress, and (3) negligent infliction of emotional distress. Defendants demurred generally and specially (for uncertainty) to all causes of action. They assert that (1) no cause of action can be stated against Luni for wrongful discharge or infliction of emotional distress since he is not individually liable for injuries resulting from acts he undertakes on behalf of his employer, Gemini, (2) the cause of action for wrongful discharge in violation of public policy is barred by the “at-will” doctrine of employment because that cause of action does not allege facts which constitute a claim for wrongful termination in violation of public policy, and (3) the causes of action for wrongful infliction of emotional distress are barred by the “exclusivity” rule of the California’s Workers’ Compensation Act (Lab. Code, § 3200 et seq.)
 

 Defendants’ general demurrers were sustained without leave to amend. The trial court agreed that plaintiff’s causes of action for infliction of emotional distress are barred by workers’ compensation law. The court also
 
 *569
 
 determined the cause of action for wrongful termination was not viable because (1) the statutes on which plaintiff relies for an exception to the doctrine of at-will employment “either do not apply or do not inure to the benefit of the public,” and (2) plaintiff did not show that Luni could be held liable for the termination of plaintiff’s employment. A judgment of dismissal was entered in favor of defendants and, thereafter, plaintiff filed this timely appeal.
 

 Issues on Appeal
 

 The three issues raised in this appeal track the objections to plaintiff’s complaint asserted by the defendants and found meritorious by the trial court: (1) whether the public policy exception to the at-will employment doctrine applies so as to validate plaintiff’s cause of action for wrongful discharge, (2) whether Luni can be individually liable to plaintiff for wrongful discharge and/or infliction of emotional distress, and (3) whether plaintiff’s causes of action for infliction of emotional distress are barred by the general rule that workers’ compensation law provides the exclusive remedy for such claims.
 

 Discussion
 

 1.
 
 The Public Policy Exception to the At-will Employment Doctrine
 

 Plaintiff does not claim in his complaint to have worked for Gemini under an express or implied employment contract. “In the absence of an express or implied agreement to the contrary, an employment relationship without a fixed term is presumed to be validly terminable at the will of either party, employer or employee, at any time. [Citations.]”
 
 (Turner
 
 v.
 
 Anheuser
 
 Busch,
 
 Inc.
 
 (1994) 7 Cal.4th 1238, 1251-1252 [32 Cal.Rptr.2d 223, 876 P.2d 1022].) This at-will employment doctrine is not without exceptions. “Accordingly, while an at-will employee may be terminated for no reason, or for an arbitrary or irrational reason, there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy.”
 
 (Gantt
 
 v.
 
 Sentry Insurance
 
 (1992) 1 Cal.4th 1083, 1094 [4 Cal.Rptr.2d 874, 824 P.2d 680]
 
 (Gantt).)
 
 The Supreme Court first recognized this public policy exception to the doctrine of at-will employment in
 
 Tameny
 
 v.
 
 Atlantic Richfield Co.
 
 (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]
 
 (Tameny),
 
 disapproved on another point in
 
 Foley
 
 v.
 
 Interactive Data Corp.
 
 (1988) 47 Cal.3d 654, 687 [254 Cal.Rptr. 211, 765 P.2d 373]
 
 (Foley).
 
 “What is vindicated through the
 
 [Tameny]
 
 cause of action is not the terms or promises arising out of the particular employment relationship involved, but rather the public interest in not permitting employers to impose
 
 *570
 
 as a condition of employment a requirement that an employee act in a manner contrary to fundamental public policy.”
 
 (Foley, supra,
 
 47 Cal.3d at p. 667, fn. 7.) “[E]mployees discharged in violation of fundamental public policy may bring an action against their employers sounding in tort.”
 
 {Gantt, supra,
 
 1 Cal.4th at p. 1098.) For this reason,
 
 Tameny
 
 causes of action are not preempted by the exclusive remedy provisions of workers’ compensation law.
 
 (Ibid.)
 

 In deciding whether an employee’s cause of action for wrongful termination in violation of public policy has merit, courts seek to distinguish between “claims that genuinely involve matters of public policy, and those that concern merely ordinary disputes between employer and employee.”
 
 (Gantt, supra,
 
 1 Cal.4th at p. 1090.) “[T]he policy in question must involve a matter that affects society at large rather than a purely personal or proprietary interest of the plaintiff or employer; in addition, the policy must be ‘fundamental,’ ‘substantial’ and ‘well established’ at the time of the discharge. [Citation.]”
 
 (Ibid.)
 
 Courts must determine whether the discharge of the employee “affects a duty which inures to the benefit of the public at large rather than to a particular employer or employee. For example, many statutes simply regulate conduct between private individuals, or impose requirements whose fulfillment does not implicate fundamental public policy concerns.”
 
 (Foley, supra,
 
 47 Cal.3d at p. 669.) The
 
 Foley
 
 court held that while an employer may not discharge an employee for reporting possible criminal activity at his employment to law enforcement authorities, an employee may be discharged for reporting, to his employer, that a supervisor was under investigation by the Federal Bureau of Investigation for possible criminal activity at the supervisor’s former job. The court found the employee’s report in the latter case served only the interest of the employer.
 
 (Id.
 
 at pp. 669-671.)
 

 “[T]he cases in which violations of public policy are found generally fall into four categories: (1) refusing to violate a statute [citations]; (2) performing a statutory obligation [citation]; (3) exercising a statutory right or privilege [citation]; and (4) reporting an alleged violation of a statute of public importance [citations].”
 
 (Gantt, supra,
 
 1 Cal.4th at pp. 1090-1091, fn. omitted.) However, the tort of wrongful discharge in violation of public policy is not limited to these four categories.
 
 (Gould
 
 v.
 
 Maryland Sound Industries, Inc.
 
 (1995) 31 Cal.App.4th 1137, 1147 [37 Cal.Rptr.2d 718]
 
 (Gould).)
 
 In
 
 Gantt,
 
 the court held a
 
 Tameny
 
 cause of action must be grounded in a statute or constitutional provision which evidences the public policy in question. The court rejected wrongful termination causes of action which are based on public policy delineated in administrative rules, regulations and decisions, and in judicial decisions.
 
 (Gantt, supra,
 
 1 Cal.4th at p. 1089 et seq.)
 

 
 *571
 
 Thus, the issue before us in the instant case is “whether there exists a clear constitutional or legislative declaration of fundamental public policy forbidding plaintiff’s discharge under the facts and circumstances presented [by the allegations in plaintiff’s complaint].”
 
 (Gantt, supra,
 
 1 Cal.4th at p. 1095.) That is, is there a fundamental public policy against an employer’s retaliation for its employee having asserted a right to be free from the employer’s withholding of pay, as alleged to have occurred in this case? We conclude there is such a fundamental public policy.
 

 2.
 
 The Statutes Upon Which Plaintiff Rests His Tameny Cause of Action
 

 One need only examine provisions in the Labor Code to realize that “the prompt payment of wages due an employee is a fundamental public policy of this state.”
 
 (Gould, supra,
 
 31 Cal.App.4th at p. 1147.) For example, Labor Code sections 201 and 202 set very short time limits for payment of wages to employees who have been discharged or who have voluntarily left their jobs.
 

 Other Labor Code sections also demonstrate the Legislature’s belief that an employee’s wages are highly important. Section 216 makes it a misdemeanor for an employer to willfully not pay wages that are due if the employer has the ability to pay and a demand for the wages has been made. Section 1175 makes it a misdemeanor to neglect or refuse to furnish to the Industrial Welfare Commission information on an employee’s wages. Section 1199 makes it a misdemeanor to fail to adhere to the Commission’s regulations regarding minimum wages paid. “[T]he Legislature’s decision to criminalize certain employer conduct reflects a determination the conduct affects a broad public interest.”
 
 (Gould, supra,
 
 31 Cal.App.4th at p. 1148.)
 
 [2]
 

 Additionally, section 221 of the Labor Code makes it unlawful for an employer to collect or receive from an employee any part of the wages paid
 
 *572
 
 by the employer to the employee. Labor Code section 222, which expressly relates to collective bargaining wage agreements, makes it unlawful to withhold any part of an agreed-upon wage.
 
 [3]
 
 Labor Code section 223 makes it unlawful to pay less than any contract or statute requires while purporting to pay the required wage. Labor Code section 224 sets out deductions which an employer may lawfully make from an employee’s pay. These deductions include (1) amounts the employer is empowered or required to withhold by state or federal law, (2) amounts the employer is authorized, by a collective bargaining or wage agreement, to withhold for health and welfare or pension plan contributions, and (3) amounts which are “expressly authorized in writing by the employee to cover insurance premiums, hospital or medical dues, or other deductions not amounting to a rebate or deduction from the standard wage arrived at by collective bargaining or pursuant to wage agreement or statute.” None of these categories apply to the contested deduction which Gemini made from plaintiff’s paycheck.
 

 Moreover, section 487.020 of the Code of Civil Procedure, and cases construing that statute, demonstrate the importance to an employee, to his or her family, and to society at large, of the employee’s prompt receipt of wages. That section prohibits the attachment of an employee’s earnings except in certain limited circumstances which are not present in the instant case. Moreover, it has been held that an employer may not utilize its equitable right of setoff to circumvent this prohibition.
 
 (Barnhill
 
 v.
 
 Robert Saunders & Co.
 
 (1981) 125 Cal.App.3d 1 [177 Cal.Rptr. 803]
 
 (Barnhill).)
 
 In Barnhill, the court determined that when the defendant employer paid the discharged plaintiff employee her final wages, the employer had no right to offset from those wages money which the plaintiff owed the employer on a promissory note. The court stated: “The policy underlying the state’s wage
 
 *573
 
 exemption statutes is to insure that regardless of the debtor’s improvidence, the debtor and his or her family will retain enough money to maintain a basic standard of living, so that the debtor may have a fair chance to remain a productive member of the community. [Citation.] Moreover, fundamental due process considerations underlie the prejudgment attachment exemption. Permitting [an employer] to reach [an employee’s] wages by setoff would let it accomplish what neither it nor any other creditor could do by attachment and would defeat the legislative policy underlying that exemption. We conclude that an employer is not entitled to a setoff of debts owing it by an employee against any wages due that employee”
 
 (Id.
 
 at p. 6.)
 
 [4]
 

 Kruger
 
 v.
 
 Wells Fargo Bank
 
 (1974) 11 Cal.3d 352 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266]
 
 (Kruger)
 
 addressed the issue of setoffs in a case involving unemployment and disability benefits. In
 
 Kruger,
 
 the defendant bank utilized setoff to pay itself money which the plaintiff owed the bank on her Master Charge credit card. The bank took the money from plaintiff’s checking account. Plaintiff alleged in her complaint that the funds in this account were solely unemployment compensation and state disability benefits. In reversing a judgment of dismissal obtained by the defendant after its general demurrer to plaintiff’s complaint was sustained without leave to amend, the
 
 Kruger
 
 court held that under those facts, the setoff was not proper because such funds were exempt by statute from attachment and execution. The bank was precluded from evading the statute by utilizing a setoff. The court stated: “[T]he exercise of a banker’s setoff against unemployment and disability benefits diverts money intended by the state to pay the current living expenses of the unemployed and the disabled into payment of past debts accumulated by the bank, leaving the intended beneficiaries no alternative but to seek additional relief from the state. Thus to permit bankers’ setoffs against unemployment and disability benefits will frustrate the Legislature’s objectives in providing such benefits and in protecting them from seizure by creditors.”
 
 (Id.
 
 at p. 367.)
 

 The
 
 Kruger
 
 court observed that the majority rule is that a defendant may not employ a setoff or counterclaim to obtain money that is exempt from attachment. The court noted that although several California Court of Appeal cases had permitted employers to set off debts owed them by employees by
 
 *574
 
 deducting the money from the employee’s wages, “these cases do not discuss the relationship of the state policy providing for this [attachment and execution] exemption to the employer’s assertion of setoff, nor recognize that the majority view in other jurisdictions is that exempt wages are not subject to setoff. [Citation.]”
 
 (Kruger, supra,
 
 11 Cal.3d at p. 369, fn. 25.) The court stated it therefore did not “regard these [California] decisions as establishing a California rule permitting assertion of setoffs against exempt property.” (Ibid.)
 
 [5]
 

 California courts have recognized that wages are highly significant not only to the employee who earns them, but also to his or her family, and to society in general which will be burdened with supporting said persons if the employee is denied his or her wages. “California courts have long recognized wage and hours laws ‘concern not only the health and welfare of the workers themselves, but also the public health and general welfare.’ [Citation.]” (Go
 
 uld, supra,
 
 31 Cal.App.4th at p. 1148.) “Public policy has long favored the ‘full and prompt payment of wages due an employee.’ [Citation.] ‘[W]ages are not ordinary debts .... [B]ecause of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay’ promptly. [Citation.]”
 
 (Pressler
 
 v.
 
 Donald L. Bren Co.
 
 (1982) 32 Cal.3d 831, 837 [187 Cal.Rptr. 449, 654 P.2d 219].)
 

 In summary, it is clear from the many Labor Code sections set out above and from Code of Civil Procedure section 487.020, that there is in this state a fundamental and substantial public policy protecting an employee’s wages, and that protection includes freedom from setoffs such as the one plaintiff has alleged in his complaint. Because plaintiff further alleged that he was fired because he asserted his right to receive earnings free from Gemini’s setoff, plaintiff alleged a valid
 
 Tameny
 
 cause of action. Therefore, Gemini’s demurrer to that cause of action should have been overruled. However, as next discussed, Luni’s demurrer to the wrongful discharge cause of action was properly sustained without leave to amend.
 

 
 *575
 
 3.
 
 The Issue Whether Luni Can Be Held Liable to Plaintiff
 

 a.
 
 The Cause of Action for Wrongful Discharge in Violation of Public Policy
 

 Recent cases have addressed the issue of individual liability of third parties who are alleged to have participated in some fashion in a defendant employer’s decision to terminate the employment of a plaintiff. These cases concluded it is the employer, and not the third parties, who can be held liable to the discharged employee in his or her suit for wrongful discharge in violation of public policy.
 

 Weinbaum
 
 v.
 
 Goldfarb, Whitman & Cohen
 
 (1996) 46 Cal.App.4th 1310 [54 Cal.Rptr.2d 462] concerned plaintiff employees who alleged in their complaint they were fired because they refused to prepare false financial and accounting reports for their employer. The plaintiffs alleged various causes of action against their employer, including one for wrongful termination in violation of public policy. They also alleged a cause of action against third party defendants for “conspiracy to wrongfully terminate in violation of public policy and aiding and abetting thereof.” The third party defendants demurred to this conspiracy cause of action on the ground plaintiffs did not and could not state a cause of action against them.
 

 Finding that the trial court properly sustained the third party defendants’ demurrer without leave to amend, the
 
 Weinbaum
 
 court held that third parties cannot commit the tort of wrongful discharge in violation of public policy because they are not subject to the duty on which the tort is based. Regarding the nature of that duty, the
 
 Weinbaum
 
 court cited to
 
 Foley,
 
 where the Supreme Court had observed that a discharge of an employee in violation of public policy is deemed wrongful because employers have an implied-in-law duty to manage their businesses in accordance with public policy. Noting that this duty arises necessarily from the relationship between an
 
 employer
 
 and an
 
 employee,
 
 the
 
 Weinbaum
 
 court stated: “Because tort liability arising from conspiracy presupposes that the coconspirator
 
 is legally capable of committing the tort
 
 (because he owes a duty to the plaintiff recognized by law and is thus potentially subject to liability for a breach of that duty), we hold that a third party who is
 
 not
 
 (and never was) the plaintiff’s employer cannot be liable for conspiracy to wrongfully terminate the plaintiff’s employment in violation of public policy.”
 
 (Weinbaum
 
 v.
 
 Goldfarb, Whitman & Cohen, supra,
 
 46 Cal.App.4th at p. 1315, fn. omitted.) The court stated it had found “nothing in
 
 Foley
 
 or in any other case ... to suggest that this tort imposes a duty of any kind on anyone other than the employer,” and it knew of no law which “supports [s] the notion that anyone other than the employer can discharge an employee.”
 
 (Ibid.)
 

 
 *576
 

 Jacobs
 
 v.
 
 Universal Development Corp.
 
 (1997) 53 Cal.App.4th 692 [62 Cal.Rptr.2d 446] agreed with
 
 Weinbaum. Jacobs
 
 concerned an employee who refused to continue to participate in what he believed to be conduct violative of federal lending laws. His complaint alleged he was fired by his employer because of that refusal. Besides the employer, Jacobs also named two managerial employees as defendants in his suit. The
 
 Jacobs
 
 court affirmed the summary judgment granted to the individual defendants on the basis they could not be liable to Jacobs for tortious discharge because they were not his employer.
 
 (Id.
 
 at pp. 703-704.)
 
 [6]
 

 In the instant case, plaintiff argues we should reject the holdings in
 
 Weinbaum
 
 and
 
 Jacobs
 
 because those cases did not consider the basis of tort liability upon which
 
 he
 
 relies to support his inclusion of Luni as a defendant, namely, Civil Code section 2343. That section states in relevant part: “One who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency, in any of the following cases, and in no others: [¶] . . . [¶] 3. When his acts are wrongful in their nature.” Plaintiff cites
 
 Bayuk
 
 v.
 
 Edson
 
 (1965) 236 Cal.App.2d 309 [46 Cal.Rptr. 49] as a pertinent application of section 2343. In
 
 Bayuk,
 
 the court observed that if an agent commits a tort while acting under the authority of his principal, he is liable for the tort even though his principal is liable too. (236 Cal.App.2d at pp. 319-320.) The question then is whether Luni committed a tort. That question was answered in
 
 Weinbaum:
 
 Luni did not commit the tort of wrongful discharge in violation of public policy because the tort has its basis in the employer-employee relationship and Luni was not plaintiff’s employer. Thus, plaintiff can have no cause of action against Luni for wrongful termination.
 

 b.
 
 The Causes of Action for Infliction of Emotional Distress
 

 As discussed below, the validity of plaintiff’s causes of action for wrongful infliction of emotional distress is dependent upon his having a viable
 
 *577
 
 cause of action for wrongful termination. Since plaintiff can have no cause of action against Luni for wrongful termination, the trial court correctly sustained, without leave to amend, Luni’s demurrer to the causes of action for infliction of emotional distress.
 

 4.
 
 The Causes of Action for Infliction of Emotional Distress Are Not Precluded by the “Exclusivity” Rule
 

 Gemini contends plaintiff cannot maintain a cause of action for infliction of emotional distress because such damage comes within the exclusive remedy of workers’ compensation law. It is true that generally an employee can have no tort recovery for emotional distress resulting from his employment. The emotional distress which stems from an employer’s unfavorable supervisory decisions, including termination of employment, is a normal part of the employment relationship, even when the distress results from an employer’s conduct that is intentional, unfair or outrageous. Thus, the employee is left to his workers’ compensation remedy.
 
 (Gantt, supra,
 
 1 Cal.4th at p. 1099;
 
 Shoemaker
 
 v.
 
 Myers
 
 (1990) 52 Cal.3d 1, 18-20 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016].) However, a plaintiff
 
 can
 
 recover for infliction of emotional distress if he or she has a tort cause of action for wrongful termination in violation of public policy or wrongful termination in violation of an express statute because then, emotional distress damages are simply a component of compensatory damages.
 
 (Gantt, supra,
 
 1 Cal.4th at pp. 1100-1101;
 
 Shoemaker, supra,
 
 52 Cal.3d at p. 25.) Given that plaintiff has alleged such a cause of action in his complaint, Gemini’s demurrer to the causes of action for emotional distress, which was grounded solely on the Workers’ Compensation Act, should have been overruled.
 

 Disposition
 

 The judgment of dismissal is affirmed as to Luni and reversed as to Gemini, and the cause is remanded for further proceedings consistent with the views expressed herein. Plaintiff shall recover his costs on appeal.
 

 Kitching, J., and Aldrich, J., concurred.
 

 [1]
 

 Because a general demurrer tests the sufficiency of the allegations in a complaint as a matter of law, we accept as true the properly pleaded allegations of fact in plaintiff’s complaint, but not the contentions, deductions, or conclusions of law or fact. We conduct a de novo review of the sufficiency of the allegations, giving the complaint a reasonable interpretation, seeking to find whether it states any cause of action, and construing its allegations liberally.
 
 (Blank
 
 v.
 
 Kirwan
 
 (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58];
 
 Coopers & Lybrand
 
 v.
 
 Superior Court
 
 (1989) 212 Cal.App.3d 524, 529 [260 Cal.Rptr. 713];
 
 Fundin
 
 v.
 
 Chicago Pneumatic Tool Co.
 
 (1984) 152 Cal.App.3d 951, 955 [199 Cal.Rptr. 789].)
 

 [2]
 

 We disagree with defendants’ assertion that
 
 Gould
 
 is not applicable to this case because it is factually different, to wit, in
 
 Gould
 
 the plaintiff alleged he was fired because his employer wanted to avoid paying him accrued commissions and vacation pay, whereas here, plaintiff was ultimately reimbursed for the money withheld from his pay, save the $35 which he had agreed to reimburse Gemini. This distinction is not relevant since plaintiff alleges he was fired because he voiced his statutory right to be paid in accordance with the Labor Code. Thus, both
 
 Gould
 
 and this case involve statutes and well-established public policy regarding earnings. Defendants also assert there is a more than a two-month span between the offset which defendants made and the date plaintiff was terminated and therefore it is clear that plaintiff was not fired to avoid paying him compensation. However, the period of time between when plaintiff questioned defendants’ deduction and when defendants fired plaintiff was two weeks, not two months. Moreover, even if it were two months, we cannot say,
 
 as a matter of law,
 
 that a two-month span in this case would negate a nexus between plaintiffs voicing of his rights and defendants’ firing him.
 

 [3]
 

 An employee’s wages are of such public concern that pay arrangements to which an employee agrees but which are in violation of a collective bargaining agreement will not be enforced against the employee, despite his agreement to them.
 
 (Waters
 
 v.
 
 San Dimas Ready Mix Concrete
 
 (1963) 222 Cal.App.2d 380 [35 Cal.Rptr. 215].) In
 
 Waters,
 
 the plaintiff employee, together with his fellow employees, had agreed to forego overtime pay and instead adopt a straight time arrangement which they felt was more beneficial to them. Indeed, the workers’ vote in favor of this alternative arrangement was unanimous. However, the arrangement violated the terms of the collective bargaining agreement which governed the employees and their employer. When the plaintiff in the
 
 Waters
 
 case left his employment, he sued the defendant employer to recover the pay which he would have received under the collective bargaining agreement had he not been paid under the “special” arrangement. The plaintiff prevailed in the trial court and that decision was affirmed on appeal. The reviewing court determined that because of the public policy regarding preservation of earnings, the doctrines of equitable estoppel, unclean hands, and pari delicto were not applicable to the case. The Court of Appeal based its decision on Labor Code section 222 which, as noted above, prohibits an employer from withholding wages agreed upon in a collective bargaining agreement, and section 219 which provides that “no provision of this article can in any way be contravened or set aside by a private agreement, whether written, oral, or implied.”
 

 [4]
 

 Defendants assert
 
 Barnhill
 
 is not applicable to the instant case because
 
 Barnhill
 
 did not concern wrongful termination or public policy. Obviously, the latter point is invalid. Defendants also assert
 
 Barnhill
 
 is inapposit because it involved a violation of a statute and the instant case does not. That contention is also incorrect. Plaintiff alleged a violation of several statutes, including Labor Code section 224. The facts alleged in plaintiffs complaint come within that section. Furthermore, plaintiff alleged a violation of the Code of Civil Procedure section which prohibits attachments of earnings and equitable setoffs from earnings. The complaint also alleges facts which come within that section.
 

 [5]
 

 There is no merit to defendants’ assertion that
 
 Prudential Ins. Co.
 
 v.
 
 Fromberg
 
 (1966) 240 Cal.App.2d 185 [49 Cal.Rptr. 475] supports their position in this case.
 
 Prudential
 
 involved a series of salary plans which the plaintiff insurance company used with its insurance salespeople. Under these plans, moneys were advanced to a salesperson by Prudential and then charged against the salesperson’s commissions. Prudential did this to equalize the insurance agent’s weekly take-home pay. When the defendant insurance agent in
 
 Prudential
 
 left his job, Prudential asserted it was entitled to withhold, from his final commissions, the advances Prudential had made to him. While the
 
 Prudential
 
 court acknowledged that “it is undoubtedly the public policy of this state that workers’ wages are accorded a special status and to that end are protected by numerous statutes regulating their payment, assignment and exemption” the court held Prudential’s earnings arrangement did not violate California law.
 
 {Id.
 
 at p. 190.) Thus, Prudential’s withholding of its advances from the plaintiffs commissions was simply in accordance with its salary plans.
 

 [6]
 

 Defendants also rely on
 
 Janken
 
 v.
 
 GM Hughes Electronics
 
 (1996) 46 Cal.App.4th 55 [53 Cal.Rptr.2d 741] to support their contention that Luni cannot be liable to plaintiff because he was not plaintiff’s employer. However,
 
 Janken
 
 involved an action brought under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.), and the focus of the decision in that case was on specific language in the act. Thus,
 
 Janken
 
 does not provide support for defendant’s contention. The plaintiffs in
 
 Janken
 
 were former and current employees of the defendant employer. Also named as defendants in their suit were three of the employer’s supervisory employees, whom the plaintiffs alleged discriminated against them on the basis of age in violation of the act. The
 
 Janken
 
 court concluded that under the provisions of the act, supervisory employees can be personally liable to a coworker for violation of the act’s proscription against harassment, but they cannot be liable under the act’s provisions prohibiting discrimination; only employers themselves can be liable under the latter class of provisions. The court held that common personnel management actions, such as firing an employee, are not harassment because they are necessary in carrying out personnel management duties; however they can be discriminatory if based on an improper motive. Harassment on the other hand involves actions not necessary to personnel management.