[No. B215179. Second Dist., Div. One. July 30, 2010.]

ROSEMARY SILGUERO, Plaintiff and Appellant, v.
CRETEGUARD, INC., et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for
publication with the exception of parts B. and C. of the Discussion.

COUNSEL

Law Offices of Lisa L. Maki, Lisa L. Maki and Christina M. Coleman for Plaintiff and Appellant.

Walsworth, Franklin, Bevins & McCall, James A. Anton and Joshua R. Dale for Defendants and Respondents.

OPINION

MALLANO, P. J.—This case presents the question of whether a terminated employee working in the area of sales has a viable claim for wrongful termination in violation of public policy under *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330] (*Tameny*) against her subsequent employer when the employee's former employer had contacted the employee's subsequent employer and had informed it that the employee had signed an agreement with the former employer which prohibited the employee "from all sales activities for 18 months following either departure or termination," and the subsequent employer had terminated the employee's employment out of "respect and understanding with colleagues in the same industry," notwithstanding its belief that "non-compete clauses are not legally enforceable here in California."

Because of Business and Professions Code section 16600's legislative declaration of California's "settled legislative policy in favor of open competition and employee mobility" (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 946 [81 Cal.Rptr.3d 282, 189 P.3d 285] (*Edwards*)), we conclude that the employee has a viable *Tameny* claim.[1] Accordingly, the judgment entered after the trial court sustained without leave to amend the subsequent employer defendants' demurrer to the second amended complaint will be reversed.

---

[1] Unspecified statutory references are to the Business and Professions Code.

Section 16600 provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

"The chapter excepts noncompetition agreements in the sale or dissolution of corporations (§ 16601), partnerships (*ibid.*; § 16602), and limited liability corporations (§ 16602.5)." (*Edwards, supra*, 44 Cal.4th at pp. 945–946.) Sections 16606 and 16607 provide that customer lists of telephone answering services and employment agencies constitute their trade secrets and confidential information.

## BACKGROUND

The operative facts are those alleged in Rosemary Silguero's second amended complaint (complaint), in which a 10th cause of action for wrongful termination and an 11th cause of action for illegal trade restriction in violation of the Cartwright Act (§ 16700 et seq.) are asserted against defendants Creteguard, Inc., Vaporgauge, Inc., Thomas Nucum, and Theodore Nucum (collectively Creteguard).

We deny Creteguard's request, made for the first time on appeal, that judicial notice be taken of portions of Silguero's deposition testimony quoted in Creteguard's respondents' brief. "One of the dangers of winning on demurrer is that you are stuck, on appeal, with your opponent's version of the facts, and those facts can be highly critical of you indeed." (*Kruss v. Booth* (2010) 185 Cal.App.4th 699, 728, fn. 36 [111 Cal.Rptr.3d 56].) This is so because "[w]hen reviewing a judgment dismissing a complaint after a successful demurrer, we assume the complaint's properly pleaded or implied factual allegations are true, and we give the complaint a reasonable interpretation, reading it in context." (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320 [25 Cal.Rptr.3d 320, 106 P.3d 976].) The question of the plaintiff's ability to prove the allegations or the possible difficulty in making such proof does not concern the reviewing court. (*Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 496, fn. 2 [229 Cal.Rptr. 456, 723 P.2d 573].) "The hearing on demurrer may not be turned into a contested evidentiary hearing through the guise of having the court take judicial notice of documents whose truthfulness or proper interpretation are disputable." (*Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374 [228 Cal.Rptr. 878]; see generally *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1568–1570 [8 Cal.Rptr.2d 552].) We thus ignore Creteguard's arguments premised on facts allegedly obtained through discovery but not reflected in the complaint.

The complaint alleged as follows: In 2003, Silguero began employment with Floor Seal Technology, Inc. (FST), as an in-house sales representative where she placed telephone orders for FST's products. In August 2007, FST threatened Silguero with termination unless she signed a confidentiality agreement. FST forced Silguero to sign an agreement which prohibited her "from all sales activities for 18 months following either departure or termination." FST terminated Silguero's employment in October 2007.

Shortly after Silguero's termination by FST, she found employment with Creteguard. FST contacted Creteguard and "requested the cooperation and participation of [Creteguard] in enforcing the confidentiality agreement, including those provisions prohibiting Silguero from all sales activities for

18 months following Silguero's departure or termination from FST." In November 2007, Creteguard's chief executive officer, Thomas Nucum, informed Silguero in writing that " 'it has been brought to my attention . . . that you have signed a confidentiality/non-compete agreement with your past employer[.] [W]e regret to inform you that [Creteguard] is unable to continue your employment effective today 11/14/07[.] [A]lthough we believe that non-compete clauses are not legally enforceable here in California, [Creteguard] would like to keep the same respect and understanding with colleagues in the same industry.' "

In the 10th cause of action, Silguero alleged that the noncompetition agreement enforced by Creteguard was void pursuant to section 16600, that no statutory exception to section 16600 applied, and that Creteguard's "enforcement and ratification of an illegal and void non-compete agreement . . . violated . . . the public policy of the State of California." The complaint further stated that "[t]he act by [Creteguard] of terminating Plaintiff's employment in enforcement and ratification of an illegal and void non-compete agreement, pursuant to and at the request of [FST], constitutes an illegal conspiracy against trade" in violation of sections 16720 and 16726 and the public policy of the State of California embodied in those laws.[2]

In the 11th cause of action, Silguero incorporated all of the above allegations and sought damages under the Cartwright Act against Creteguard.

Silguero also sued FST for, among other things, intentional interference with contract, claiming FST interfered with her contract with Creteguard by successfully enforcing the invalid noncompetition agreement, causing her to be terminated by Creteguard. The parties in their briefs do not tell us the status of that claim and it is not part of this appeal.

Creteguard demurred to the complaint. As to the 10th cause of action, Creteguard argued that "there was no clearly-delineated public policy prohibiting a subsequent employer from honoring a putatively valid non-compete/confidentiality agreement entered into by an employee and a former employer," and that any restraint of trade in this instance was committed by FST. Creteguard concluded that its conduct, "in an abundance of caution," was designed not to invite a lawsuit by FST "for a *then-unsettled* issue of whether such an agreement was enforceable," and does not give rise to a *Tameny* claim.

---

[2] Section 16720 provides in pertinent part: "A trust is a combination of capital, skill or acts by two or more persons for any of the following purposes: [¶] (a) To create or carry out restrictions in trade or commerce."

Section 16726 provides: "Except as provided by this chapter, every trust is unlawful, against public policy and void."

With respect to the 11th cause of action, Creteguard argued, among other things, that Silguero's injury—the loss of a job—is not the sort of injury the Cartwright Act intended to redress.

Silguero filed opposition to the demurrer and Creteguard filed a reply. After a hearing the trial court sustained the demurrer without leave to amend. Silguero appealed from the judgment.

Based on allegations in a superseded first amended complaint involving gender and age discrimination under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), Creteguard argued that it was a prevailing party under FEHA and sought over $50,000 in attorney fees. After opposition and a hearing on the motion, the trial court awarded Creteguard $23,532.50 in attorney fees and costs. Silguero appealed from the order.

## DISCUSSION

"When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations. [Citation.]" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) As a demurrer tests the legal sufficiency of a complaint, we review the trial court's ruling independently. (*Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373, 1379 [108 Cal.Rptr.3d 669].)

■ We conclude that Silguero's complaint alleges facts supporting a *Tameny* claim for wrongful termination in violation of the public policy in section 16600 prohibiting noncompetition agreements, but not a viable claim under the Cartwright Act.

### A. Wrongful Termination (Tameny *Claim*)

■ In *Tameny, supra,* 27 Cal.3d at page 178, the Supreme Court "recognized that although employers have the power to terminate employees at will, they may not terminate an employee for a reason that is contrary to public policy." (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1076 [130 Cal.Rptr.2d 892, 63 P.3d 979] (*Little*).) " '[The] public policy exception to the at-will employment rule must be based on policies "carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions . . . ." ' [Citation.] Moreover, the public policy that is the basis for such a claim must be ' " 'public' in that it 'affects society at large' rather than the

individual, must have been articulated at the time of discharge, and must be ' "fundamental" ' and ' "substantial." ' " ' [Citation.] Thus, a legitimate *Tameny* claim is designed to protect a public interest and therefore ' "cannot be contravened by a private agreement." ' [Citation.]" (*Little, supra*, 29 Cal.4th at p. 1077.)

"Courts must determine whether the discharge of the employee 'affects a duty which inures to the benefit of the public at large rather than to a particular employer or employee. For example, many statutes simply regulate conduct between private individuals, or impose requirements whose fulfillment does not implicate fundamental public policy concerns.' [Citation.]" (*Phillips v. Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, 570 [74 Cal.Rptr.2d 29] (*Phillips*).) " 'What is vindicated through the cause of action is not the terms or promises arising out of the particular employment relationship involved, but rather the public interest in not permitting employers to impose as a condition of employment a requirement that an employee act in a manner contrary to fundamental public policy.' [Citation.]" (*D'Sa v. Playhut, Inc.* (2000) 85 Cal.App.4th 927, 932 [102 Cal.Rptr.2d 495] [termination of employee for his failure to sign noncompetition agreement constituted wrongful termination in violation of public policy of § 16600].)

"Thus, the issue before us in [this] case is 'whether there exists a clear constitutional or legislative declaration of fundamental public policy forbidding plaintiff's discharge under the facts and circumstances presented [by the allegations in plaintiff's complaint].' " (*Phillips, supra*, 63 Cal.App.4th at p. 571.) We determine that section 16600 provides such a legislative declaration of a fundamental public policy and that Creteguard's termination of Silguero constituted a wrongful termination in violation of that policy.

■ "Under the common law, as is still true in many states today, contractual restraints on the practice of a profession, business, or trade, were considered valid, as long as they were reasonably imposed. [Citation.] This was true even in California. [Citation.] However, in 1872 California settled public policy in favor of open competition, and rejected the common law 'rule of reasonableness,' when the Legislature enacted the Civil Code. (Civ. Code, former § 1673, repealed by Stats. 1941, ch. 526, § 2, p. 1847, and enacted as Bus. & Prof. Code, § 16600, Stats. 1941, ch. 526, § 1, p. 1834 . . . .) Today in California, covenants not to compete are void, subject to several exceptions . . . ." (*Edwards, supra*, 44 Cal.4th at p. 945, citation & fn. omitted.)

"In the years since its original enactment as Civil Code section 1673, our courts have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility. [Citation.]

The law protects Californians and ensures 'that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice.' [Citation.] It protects 'the important legal right of persons to engage in businesses and occupations of their choosing.' [Citation.]" (*Edwards, supra*, 44 Cal.4th at p. 946.) Indeed, section 16600 "is unambiguous" (*Edwards*, at p. 950), and "no reported California state court decision has endorsed the Ninth Circuit's narrow-restraint exception [in which a noncompetition agreement is illegal only if it completely restrains the employee from engaging in a lawful profession, trade, or business]" (*Edwards*, at p. 949). Accordingly, California courts " 'have been clear in their expression that section 16600 represents a strong public policy of the state which should not be diluted by judicial fiat.' [Citation.]" (*Edwards*, at pp. 949–950.)

Creteguard argues that "[n]owhere in Section 16600 or subsequent sections is a Legislative intent to impose third party liability evident." Creteguard maintains that permitting a *Tameny* claim under the circumstances in this case would expand the public policy of section 16600 beyond the Legislature's intent, that no case has "ever addressed a third party's liability to a former employer or employee regarding the recognition by that third party of the validity of a non-compete agreement," and that there is no evidence that the Legislature intended "to make third parties the arbiters of the viability of non-compete agreements."

Contrary to Creteguard's contentions, similar issues arising under section 16600 have been addressed in connection with a "no-hire" agreement in *VL Systems, Inc. v. Unisen, Inc.* (2007) 152 Cal.App.4th 708 [61 Cal.Rptr.3d 818] (*VLS*).

*VLS* involved a computer consulting contract between VL Systems, Inc. (VLS), and its customer, Star Trac Strength. Under a no-hire provision, Star Trac agreed that it would not hire any VLS employees for 12 months after the termination of the consulting contract, but if it did hire VLS employees, Star Trac agreed to pay an amount equal to 60 percent of the annual compensation of the employee to VLS. Within 12 months of the termination of the parties' agreement, Star Trac posted an Internet job listing. David Rohnow, a VLS employee, applied for the job, and Star Trac hired him. Rohnow had not been employed by VLS while VLS was under contract with Star Trac. After Star Trac hired Rohnow, VLS sent Star Trac an invoice for $60,000 pursuant to the no-hire provision. Star Trac declined to pay and VLS sued Star Trac. Star Trac appealed from a judgment for $28,500 in VLS's favor. The appellate court concluded that the no-hire provision of the contract was unenforceable and reversed the judgment in favor of VLS. (*VLS, supra*, 152 Cal.App.4th at pp. 718–719.)

The Court of Appeal in *VLS* noted that the corollary to the policy set out in section 16600 is " 'that [competitors] may solicit another's employees if they do not use unlawful means or engage in acts of unfair competition.' [Citation.]" (*VLS, supra*, 152 Cal.App.4th at p. 713.) Thus, no actionable wrong is committed by a competitor who hires away his competitor's employees who are not under contract, so long as the inducement to leave is not accompanied by unlawful conduct, and no action in tort would lie against Star Trac. (*Ibid.*) The court then went on to address the issue of "whether two parties can agree on a no-hire provision as a matter of contract. Freedom of contract is an important principle, and courts should not blithely apply public policy reasons to void contract provisions. [Citation.] This type of contractual provision, however, may seriously impact the rights of a broad range of third parties. In this case, those third parties not only included the VLS employees who actually performed work for Star Trac under the contract, but all of those who did not, including Rohnow, who was not even employed by VLS at the time." (*Ibid.*)

The court in *VLS* looked to the "policies established by the cases which have found contractual provisions that restrict employment unenforceable. In *Diodes*[, *Inc. v. Franzen* (1968) 260 Cal.App.2d 244 [67 Cal.Rptr. 19]], the court stated that '[t]he interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change.' (*Diodes, supra*, 260 Cal.App.2d at p. 255.) If the interests of the employee trump the interests of the employers as a matter of public policy, then it logically follows that a broad-ranging contractual provision such as the one at issue here cannot stand." (*VLS, supra*, 152 Cal.App.4th at p. 714.) The court further reasoned: "If Star Trac had known at the time that it hired Rohnow that it either had to pay $60,000 or face a lawsuit, would it have hired Rohnow over another applicant? The answer strikes us as obvious, and just as obviously, upholding such a contractual provision would unfairly narrow the mobility of an employee who had never worked for Star Trac as a VLS employee and had independently sought out Star Trac's job opportunity. Thus, contrary to VLS's arguments, we find that enforcing this clause would present many of the same problems as covenants not to compete and unfairly limit the mobility of an employee who actively sought an opportunity with Star Trac." (*VLS*, at pp. 715–716, fn. omitted.)

"[M]ost sister state jurisdictions that have reviewed this issue [the validity of a no-hire provision] have reached a similar conclusion." (*VLS, supra*, 152 Cal.App.4th at p. 716.) After discussing *Heyde Companies v. Dove Healthcare* (2001) 2002 WI 131 [258 Wis.2d 28, 654 N.W.2d 830] (*Heyde*), the court in *VLS* stated that, "[a]s in *Heyde*, the employee in this case did not enter into an agreement not to compete (which, under California law, would probably

have been invalid). Similar to the plaintiff in [*Heyde*], VLS should not be 'allowed to accomplish by indirection that which it cannot accomplish directly.' (*Heyde, supra*, 654 N.W.2d at p. 834.) Like the contract in [*Heyde*, VLS's no-hire provision] goes far beyond what is necessary to protect VLS's legitimate interests and results in a situation where the opportunities of employees are restricted without their knowledge and consent. [¶] . . . [¶] . . . Such a broad provision is not necessary to protect VLS's interests and is outweighed by the policy favoring freedom of mobility for employees. It is therefore unenforceable." (*VLS, supra*, 152 Cal.App.4th at pp. 717–718.)

The complaint in this case alleges an "understanding" between Creteguard and FST pursuant to which Creteguard would honor FST's noncompetition agreement. Creteguard admitted in writing that it entered into this understanding with FST, "although [Creteguard] believe[d] that non-compete clauses are not legally enforceable here in California," because Creteguard "would like to keep the same respect and understanding with colleagues in the same industry." This alleged understanding is tantamount to a no-hire agreement. For the reasons set out in *VLS*, such "understanding" between Creteguard and FST would be void and unenforceable under section 16600 because it "unfairly limit[s] the mobility of an employee" and because FST "should not be 'allowed to accomplish by indirection that which it cannot accomplish directly.' " (*VLS, supra*, 152 Cal.App.4th at pp. 716, 717.)

And permitting a *Tameny* claim against Creteguard under the circumstances of this case furthers the interest of employees in their own mobility and betterment, " 'deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change.' " (*Dowell v. Biosense Webster, Inc.* (2009) 179 Cal.App.4th 564, 575 [102 Cal.Rptr.3d 1], quoting *Diodes, Inc. v. Franzen, supra*, 260 Cal.App.2d at p. 255 [in *Dowell*, both employees and their current employers sued a former employer to invalidate a noncompetition agreement].)

For all of the foregoing reasons, we conclude that Silguero has pleaded a viable *Tameny* claim against Creteguard predicated on the public policy in section 16600.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 60.

## DISPOSITION

The judgment as to defendants Thomas Nucum and Theodore Nucum (defendants only as to the 11th cause of action) is affirmed. The judgment as to defendants Creteguard, Inc., and Vaporgauge, Inc., is reversed and on remand the trial court is directed to overrule their demurrer to the 10th cause of action and to sustain without leave to amend their demurrer to the 11th cause of action of the second amended complaint. The appeal from the order awarding attorney fees and costs to Creteguard, Inc., and Vaporgauge, Inc., is dismissed. The order awarding attorney fees to Thomas Nucum and Theodore Nucum is reversed and on remand the trial court is directed to deny them attorney fees. The parties are to bear their own costs on appeal.

Chaney, J., and Johnson, J., concurred.

A petition for a rehearing was denied August 16, 2010, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 27, 2010, S186577. Corrigan, J., did not participate therein.