[No. G037334. Fourth Dist., Div. Three. June 25, 2007.]

VL SYSTEMS, INC., Plaintiff and Respondent, v.
UNISEN, INC., Defendant and Appellant.

**COUNSEL**

Self & Bhamre and Hema C. Bhamre for Defendant and Appellant.

Barth Berus & Calderon and David R. Calderon for Plaintiff and Respondent.

**OPINION**

**MOORE, J.**—VL Systems, Inc. (VLS), and Star Trac Strength (Star Trac)[1] entered into a short-term computer consulting contract. The contract provided

---

[1] Star Trac is apparently doing business as Unisen, Inc.

that Star Trac would not hire any VLS employee for 12 months after the contract's termination, subject to a liquidated damages provision. Within that period, Star Trac hired a VLS employee who had not performed any work for Star Trac, and indeed, had not been employed by VLS at the time the Star Trac contract was performed. VLS sued for breach of contract, and the court awarded it part of the amount it sought under liquidated damages provision. Star Trac now appeals, arguing the no-hire provision was unenforceable and that the liquidated damages award was improper. We agree that as written, the no-hire provision was unenforceable as a matter of law. The judgment is therefore reversed.

# I

## FACTS

VLS is a computer software consulting company that provides technical consulting services to businesses in Southern California. VLS employs consultants who work with its customers on their particular project. Some contracts provide for a fixed fee, others are based on time and material estimates. Generally speaking, VLS bills its consultants' time to clients in a manner attorneys would probably find familiar.

In 2004, VLS entered into an agreement with Star Trac for assistance in migrating to a new server at the rate of $185 per hour. VLS estimated this work would require 16 hours. This was not a large contract for VLS.

The contract included the following provision in paragraph 6.0 (paragraph 6 or the no-hire provision): "BUYER WILL NOT ATTEMPT TO HIRE SELLER'S PERSONNEL. Any hiring, or offer of employment entitles, but does not require VLSystems, Inc. to immediately cancel the performance period of this agreement. If, during the term of, or within (12) months after the termination of the performance period of this agreement, buyer hires directly, or indirectly contracts with any of seller's personnel for the performance of systems engineering and/or related services hereunder, BUYER AGREES TO PAY TO THE SELLER SIXTY PERCENT (60%) OF EITHER THE NEW ANNUAL COMPENSATION PAYABLE TO SUCH PERSONNEL or the fees paid to, or in favor of such personnel for one (1) year after such personnel separates from service with seller, whichever is applicable, as liquidated damages."

According to Rick Bilek, VLS's vice-president of operations, the purpose of paragraph 6 was to deter the hiring of consultants by its customers, to protect both VLS's investment in its consultants and to protect its customer base. A key asset in a consulting business is the expertise of the consultants.

The contract was signed by Bilek and Anthony Stella, Star Trac's information technology manager at the time. After the contract was signed, the project was completed and Star Trac paid for the work without incident.

In April 2004, after the Star Trac contract was completed, VLS hired David Rohnow as a senior engineer. He was one of 10 or 11 consultants working for VLS at the time. According to Star Trac, Rohnow was hired at a salary of $92,500 per year, or $1,778.85 per week.[2] Rohnow's billable rate for VLS was between $175 and $185 per hour, depending on the contract. During his time at VLS, approximately 47 to 55 percent of his time was nonbillable. VLS expected its consultants to eventually bill between 65 and 75 percent of their time.

In June 2004, Stella informed Star Trac that he intended to leave the company, but would stay to recruit his replacement. In July, Star Trac posted an Internet job listing for a director of information technology. Rohnow responded to this listing. He was hired and began work on September 20, 2004. Rohnow had worked for VLS for 22 weeks, or just under six months.

At the time Star Trac hired Rohnow, it was aware of paragraph 6. The company's director of corporate administration reviewed the contract and believed that because Rohnow had not performed the work for VLS, it was not relevant. Star Trac did not contact VLS to discuss Rohnow before he was hired. After Rohnow was hired, VLS sent Star Trac an invoice for $60,000, pursuant to paragraph 6.[3]

Star Trac declined to pay and VLS filed suit in February 2005, stating causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief. The case went to a bench trial in February 2006, and on March 23 the court issued a statement of decision. In relevant part, it stated: "The Court finds that [Star Trac] does owe money to [VLS] based on the violation of Paragraph 6 of the contract between them; the only question is the amount of money owing. [VLS] relies on its claim for liquidated damages. Liquidated damages, however, must bear a reasonable relation to the damage incurred by the breach. [VLS] claims that it educated and trained Rohnow for the unintended ultimate benefit of [Star

---

[2] We caution litigants against relying on exhibits to support factual assertions without ensuring those exhibits are either part of the clerk's transcript or transmitted to this court pursuant to *California Rules of Court*, rule 8.224. Citing to the portion of the reporter's transcript where the exhibits are entered into evidence is patently insufficient when it is the information contained in the exhibit itself that is relevant. According to the record, Star Trac never requested the transmittal of exhibits to this court, and the exhibits are not part of the clerk's transcript.

[3] Rohnow's starting salary at Star Trac was actually $95,000, plus a bonus program.

Trac]. Rohnow testified that he worked for [VLS] for only six months and received very little training, and further he didn't perform any services for [Star Trac] while employed by [VLS]. The Court cannot find a reasonable relationship between the amount of claimed damages of 60% of Rohnow's first year salary at [Star Trac]. The Court does find, however, that 60% of Rohnow's salary received from [Star Trac], for the amount of time which equals the amount of time Rohnow worked for [VLS], is a reasonable amount of liquidated damages as related to Rohnow's work history."

The Court entered judgment for $28,500 in VLS's favor, which represented 60 percent of $47,500. On June 13, 2006, the court granted Star Trac's motion to tax costs with regard to prejudgment interest. The court granted the motion because "[d]amages were not certain or capable of being made certain by calculation prior to the Court's ruling."

## II

## DISCUSSION

*Standard of Review*

We review any pure issues of law de novo. (*Lee v. Southern California University for Professional Studies* (2007) 148 Cal.App.4th 782, 785 [56 Cal.Rptr.3d 134].) In this case, such issues include whether paragraph 6 is enforceable as a matter of California law. Any pertinent factual determinations made by the trial court are reviewed for substantial evidence. (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].)

*Enforceability of Paragraph 6*

We begin with the potentially dispositive issue of whether paragraph 6 is enforceable under California law. According to VLS, "this case has absolutely nothing to do with an [e]mployee's freedom of movement or covenants not to compete between employer and employee. Nor does this case involve any issues involving employer/employee relations . . . . [¶] The subject contract did not 'preclude' Star Trac from hiring David Rohnow. . . . Rather, the contract simply called for the payment of a fixed sum to VLSystems should they choose to do so."

We disagree with VLS and hold that paragraph 6 is not enforceable.[4] Our analysis begins with Business and Professions Code section 16600 (section 16600), which states: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

■ "California courts have consistently declared this provision an expression of public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice. Section 16600 has specifically been held to invalidate employment contracts which prohibit an employee from working for a competitor when the employment has terminated, unless necessary to protect the employer's trade secrets. [Citation.] The corollary to this proposition is that [a competitor] may solicit another's employees if they do not use unlawful means or engage in acts of unfair competition." (*Metro Traffic Control, Inc. v. Shadow Traffic Network* (1994) 22 Cal.App.4th 853, 859 [27 Cal.Rptr.2d 573].)

Indeed, "no actionable wrong is committed by a competitor who solicits his competitor's employees or who hires away one or more of his competitor's employees who are not under contract, so long as the inducement to leave is not accompanied by unlawful action. [Citations.]" (*Diodes, Inc. v. Franzen* (1968) 260 Cal.App.2d 244, 255 [67 Cal.Rptr. 19] (*Diodes*).) While the question of actively soliciting a competitor's employees has been a more difficult one for courts over the years, such facts do not apply here. In short, no action in tort would lie against Star Trac.

Thus, the question becomes whether two parties can agree on a no-hire provision as a matter of contract. Freedom of contract is an important principle, and courts should not blithely apply public policy reasons to void contract provisions. (*Dunkin v. Boskey* (2000) 82 Cal.App.4th 171, 183–184 [98 Cal.Rptr.2d 44].) This type of contractual provision, however, may seriously impact the rights of a broad range of third parties. In this case, those third parties not only included the VLS employees who actually performed work for Star Trac under the contract, but all of those who did not, including Rohnow, who was not even employed by VLS at the time.

The only California case that comes close to this one was an appeal following an arbitration award in *Webb v. West Side District Hospital* (1983) 144 Cal.App.3d 946 [193 Cal.Rptr. 80] (*Webb*), overruled on other grounds by *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899]. *Webb* upheld a no-hire provision. We find *Webb* unpersuasive

---

[4] Our holding, of course, applies only to this case, and we caution against any inference that all such clauses are unenforceable. Perhaps a more narrowly drawn clause limited to *soliciting* employees who had actually performed work for the client might pass muster.

here, primarily in light of its very different facts. *Webb* involved a plaintiff whose entire business was supplying labor to hospitals, much like a temporary agency, and the scope of the court's analysis was mostly limited to the hospital/physician framework. (*Id.* at pp. 953–955.) The scope of the no-hire provision was limited to the employees provided by the plaintiff who actually performed work for the hospital. (*Id.* at p. 949.) This fact sharply distinguishes it from paragraph 6, which applied to any VLS employee, as does the fact that the plaintiff apparently suffered actual damages when the contract was terminated prior to the hospital's employment of one of the plaintiff's employees. (*Id.* at p. 950.)

Because we find *Webb, supra,* 144 Cal.App.3d 946, distinguishable and unpersuasive in the present context, we look more generally to the policies established by the cases which have found contractual provisions that restrict employment unenforceable. In *Diodes*, the court stated that "[t]he interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change." (*Diodes, supra,* 260 Cal.App.2d at p. 255.) If the interests of the employee trump the interests of the employers as a matter of public policy, then it logically follows that a broad-ranging contractual provision such as the one at issue here cannot stand.

▪ Courts have upheld narrowly drawn provisions which might limit the employment mobility of nonparties. In *Loral Corp. v. Moyes* (1985) 174 Cal.App.3d 268 [219 Cal.Rptr. 836] (*Loral*), the plaintiffs sued the defendant, a former employee, for breach of a contract for the defendant's alleged inducement of the plaintiff's employees to work for defendant's new employer. (*Id.* at p. 271.) On appeal from a judgment of nonsuit, the court reversed and allowed the case to proceed. The court noted the general rule that "contracts precluding a former employee from obtaining new employment with a competitor are invalid under section 16600." (*Id.* at pp. 275–276.) But "reasonably limited restrictions which tend more to promote than restrain trade and business do not violate the statute. [Citations.]" (*Id.* at p. 276.)

The court ultimately held that the provision at issue was more like a nonsolicitation or nondisclosure agreement than an invalid agreement not to compete. "Defendant is restrained from disrupting, damaging, impairing or interfering with his former employer by raiding [the plaintiff's] employees under his termination agreement. This does not appear to be any more of a significant restraint on his engaging in his profession, trade or business than a restraint on solicitation of customers or on disclosure of confidential information." (*Loral, supra,* 174 Cal.App.3d at p. 279.) Notably, "[t]his restriction

only slightly affects [the plaintiff's] employees. They are not hampered from seeking employment with [the defendant's new employer] nor from contacting [the defendant]. All they lose is the option of being contacted by him first. It does not restrain them from being employed by [the defendant's employer], contrary to defendant's argument." (*Ibid.*)

The facts of this case sharply contrast with the situations in which such contractual provisions have been upheld, including *Loral*. In this case, the employment attempt was initiated by the third party—Star Trac did not solicit Rohnow's application for the position. Rohnow chose to apply independent of any connection between VLS and Star Trac. Indeed, it appears to be coincidence that VLS had performed recent work for Star Trac. Moreover, Rohnow was employed by VLS for only a short time, and he did no work at all for Star Trac while so employed. This is not a case where the happy client of a consulting firm attempts to poach an employee. Rohnow, like any other applicant, chose to seek the job with Star Trac.

Rohnow's lack of prior contact with Star Trac also distinguishes this matter from a sister state case upon which VLS relies, *H&M Com. Driver v. Fox Valley Containers* (2004) 209 Ill.2d 52 [805 N.E.2d 1177, 282 Ill.Dec. 160]. In that case, like *Webb*, the no-hire clause was expressly limited to employees that the plaintiff had provided to the defendant. (805 N.E.2d at p. 1178.) Thus, the scope of the clause was far less broad and impacted a substantially smaller number of employees.[5]

Star Trac, of course, eventually learned of Rohnow's employment with VLS. VLS points to Star Trac's prior positive experience with VLS, the only consulting firm it worked with that year, and equates it to a "free look" prior to hiring Rohnow. This inference is overbroad and not logically drawn from the facts. If Star Trac knew of Rohnow's employment record, it also surely knew that he had only been employed by VLS for a short time, and further, its own experience with VLS was brief. There is nothing in the record to suggest (and it strains credulity to do so) that Rohnow's brief employment with VLS was the causal factor in Star Trac's decision to hire him.

While VLS claims that enforcing paragraph 6 would not have limited Star Trac's ability to hire Rohnow or his mobility, logic and common sense tells us otherwise. If Star Trac had known at the time that it hired Rohnow that it

---

[5] The other sister state case VLS cites is from Virginia, *Therapy Services v. Crystal City Nursing Ctr.* (1990) 239 Va. 385 [389 S.E.2d 710, 6 Va.L.Rep. 1598]. Virginia, however, applies a standard substantially different from section 16600, specifically, whether the provision "is unreasonable as between the parties or is injurious to the public." (389 S.E.2d at p. 711.) The Virginia court's decision, which was based on that standard, is simply inapplicable under California law.

either had to pay $60,000 or face a lawsuit, would it have hired Rohnow over another applicant? The answer strikes us as obvious, and just as obviously, upholding such a contractual provision would unfairly narrow the mobility of an employee who had never worked for Star Trac as a VLS employee and had independently sought out Star Trac's job opportunity.[6] Thus, contrary to VLS's arguments, we find that enforcing this clause would present many of the same problems as covenants not to compete and unfairly limit the mobility of an employee who actively sought an opportunity with Star Trac.

It appears from our research that most sister state jurisdictions that have reviewed this issue have reached a similar conclusion. The Wisconsin Supreme Court considered this issue in *Heyde Companies v. Dove Healthcare* (2001) 258 Wis.2d 28 [654 N.W.2d 830] (*Heyde*). The plaintiff, which owned Greenbriar Rehabilition (Greenbriar) had a contract to provide physical therapists to Dove Healthcare (Dove), which operated nursing homes. (*Heyde, supra*, 654 N.W.2d at p. 832.) The contract included a no-hire provision, which stated that Dove would not hire any of Greenbriar's employees without its consent during the contract period and for one year thereafter. (*Ibid.*) If Dove did so, it would pay Greenbriar 50 percent of the employee's annual salary. Shortly after terminating the contract, Dove hired one current and four former Greenbriar employees. (*Ibid.*)

Greenbriar sued, and Dove eventually moved for summary judgment on the grounds that the no-hire provision was unenforceable. The trial court disagreed with Dove's argument and denied the motion. The appellate court reversed and was affirmed by the Wisconsin Supreme Court. (*Heyde, supra*, 654 N.W.2d at p. 831.) The court's analysis began with Wisconsin's employee restraint of trade statute, which permits an employee covenant not to compete if the restrictions therein "are reasonably necessary for the protection of the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint." (Wis. Stat. § 103.465.)

Because the agreement was between Greenbriar and Dove, on its face, the statute did not apply. The court held, however that, "the fact that Greenbriar attempts to restrict its employees through a no-hire provision with Dove instead of a restrictive covenant with its employees does not change the underlying analysis. The effect of the no-hire provision is to restrict the employment of Greenbriar's employees; it is inconsequential whether the

---

[6] Further, as perhaps suggested by the liquidated damages clause, VLS would have an extremely difficult time proving that it had suffered actual damages by Star Trac's decision to hire Rohnow. The fact that Rohnow independently applied for the position after only a few months at VLS strongly suggests that he was not planning to stay with VLS.

restriction is termed a 'no-hire' provision between Dove and Greenbriar or a 'covenant not to compete' between Greenbriar and its employees. Greenbriar is not allowed to accomplish by indirection that which it cannot accomplish directly." (*Heyde, supra*, 654 N.W.2d at p. 834.)

The court therefore used the same analysis under which it examined covenants not to compete. (*Heyde, supra*, 654 N.W.2d at p. 835.) "[I]t is clear that the no-hire provision is harsh and oppressive to Greenbriar's employees and is contrary to public policy. The former Greenbriar employees who were hired by Dove testified that they had no knowledge of the no-hire provision and that Greenbriar did not ask them to sign a non-compete agreement. . . . The [C]ourt of [A]ppeals has held that a valid covenant not to compete requires knowledge and consideration by the affected employee. [Citation.] This court has also implicitly recognized the necessity of consideration in referencing an employee's decision to sign a covenant not to compete that he or she deems unreasonable. [Citation.]" (*Id.* at p. 836.)

"Greenbriar is not prevented from protecting its interest in maintaining its employees, but it must do so through a valid restrictive covenant in compliance with Wis. Stat. § 103.465. Greenbriar is not allowed to circumvent the protections under § 103.465 by restricting the employment opportunities of its employees through contracts with other employers without their employees' knowledge and consent. An employer cannot indirectly restrict employees in a way that it cannot do directly under § 103.465. At the very least, § 103.465 requires that employees know that they are subject to a restrictive covenant and that they consent to such a restriction. Accordingly, the no-hire provision, which restricts Greenbriar's employees without their knowledge and consent, is harsh and oppressive to the employees and is contrary to public policy, in violation of § 103.465." (*Heyde, supra*, 654 N.W.2d at p. 836.)

The court went on to note: "Furthermore, the fundamental right of a person to make choices about his or her own employment is well-established. 'No one has the legal right . . . to deprive a person of the right to labor for whomsoever he will, with the consent of such other.' [Citation.] . . . According to the U.S. Supreme Court, an individual's right to make choices about his or her own employment may not be negated by business decisions that circumscribe the employment relationship." (*Heyde, supra*, 654 N.W.2d at p. 836.)

As in *Heyde*, the employee in this case did not enter into an agreement not to compete (which, under California law, would probably have been invalid). Similar to the plaintiff in that case, VLS should not be "allowed to accomplish by indirection that which it cannot accomplish directly." (*Heyde, supra*, 654 N.W.2d at p. 834.) Like the contract in that case, paragraph 6 goes far

beyond what is necessary to protect VLS's legitimate interests and results in a situation where the opportunities of employees are restricted without their knowledge and consent.

In *Communication Technical Sys. v. Densmore* (1998) 1998 SD 87 [583 N.W.2d 125] (*Densmore*), the Supreme Court of South Dakota reached a conclusion similar to that reached by the Wisconsin Supreme Court in *Heyde*. Densmore was employed by plaintiff CTS, which entered into a contract with Gateway to provide computer programming services. (*Densmore, supra,* 583 N.W.2d at p. 126.) CTS and Gateway later entered into an agreement under which Gateway agreed that during the time CTS was performing services and for one year thereafter, Gateway would not "hire, solicit or recruit *any* CTS employee . . . ." (*Ibid.*) Densmore became dissatisfied with CTS and inquired about employment with Gateway, but was told that due to the agreement, Gateway could not even discuss employment with him. Densmore left CTS and began his own consulting business, which Gateway then contracted after terminating CTS. (*Ibid.*) CTS then sued Gateway for breach of contract and Densmore for business torts. (*Id.* at pp. 126–127.)

The trial court granted summary judgment to defendants. (*Densmore, supra,* 583 N.W.2d at p. 127.) The court concluded that under South Dakota's statute prohibiting the restraint of trade (which is very similar to section 16600), the provision was invalid. "CTS improperly seeks the best of both worlds. Reserving its rights under the 'at will' employment doctrine, it wants to be able to fire Densmore for any reason, arbitrary or otherwise, or for no reason at all. However, should Densmore seek employment or a consulting contract with a former customer, CTS wants that to be forbidden fruit even though Densmore never agreed to any such limitation." (583 N.W.2d at p. 129.) Although in the instant case the former employee, Rohnow, is not being sued, the same rationale applies, because the contractual provision would make him "forbidden fruit" to any employer with whom VLS had done business in the past year.

■ Again, we take no position on whether a more narrowly drawn and limited no-hire provision would be permissible under California law. Paragraph 6, however, is in no sense narrowly drawn—it is a very broad provision covering not only solicitation by Star Trac, but all hiring, and it applies to all VLS employees, regardless of whether they worked for Star Trac or were even employed at the time. Such a broad provision is not necessary to protect VLS's interests and is outweighed by the policy favoring freedom of mobility for employees. It is therefore unenforceable.

Because we conclude that paragraph 6 is unenforceable, VLS cannot recover under the contract. We therefore need not reach the issues Star Trac raises surrounding the liquidated damages provision.

## III

## DISPOSITION

The judgment is reversed. Star Trac is entitled to its costs on appeal.

Rylaarsdam, Acting P. J., and Ikola, J., concurred.