J-A18040-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| PITTSBURGH LOGISTICS SYSTEMS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 134 WDA 2017 |
| BEEMAC TRUCKING, LLC AND BEEMAC LOGISTICS, LLC | : | |

Appeal from the Order December 22, 2016
In the Court of Common Pleas of Beaver County Civil Division at No(s):
No. 11571-2016

BEFORE: BOWES, J., LAZARUS, J., and OTT, J.

DISSENTING MEMORANDUM BY BOWES, J.: FILED MARCH 26, 2018

Pittsburgh Logistics Systems, Inc. ("PLS") appeals from the order granting in part and denying in part its petition for a preliminary injunction against BeeMac Trucking, LLC, and BeeMac Logistics, LLC ("BeeMac").[1] In that order, the trial court upheld a non-solicitation provision contained within PLS's freight-services contract with BeeMac, and, as is pertinent herein, invalidated a no-hire provision included within the same. The learned majority concluded that the trial court had a reasonable basis for denying PLS's requested relief, and affirms. Since this matter involves an issue of first

_____

[1] The record contains reference to a company named Hybrid Global Logistics ("Hybrid"). Hybrid purportedly hired two of the disputed employees, and is supposedly owned by one of those employees and BeeMac Trucking, LLC. These allegations raise questions of fact not decided by the trial court, and thus, the question of Hybrid's affiliation with BeeMac and PLS is not presently before us. I note that Hybrid is not a party to this suit.

impression, and there is strong support on both sides of the issue among our sister jurisdictions, I would find that the trial court abused its discretion in ruling that PLS was not entitled to a preliminary injunction enjoining BeeMac from hiring its employees. Hence, for the reasons outlined below, I dissent.

We garner the following from the certified record. As a third-party logistics service company, PLS coordinated the transportation of freight between its customers and certain freight carriers. On August 30, 2010, PLS entered into a Motor Carriage Services Contract (the "MCSC") with BeeMac, who specialized in trucking and transporting freight, and, in addition, also provided third-party logistics services. Of import herein, the MCSC stated:

> 14.3 The parties acknowledge that during the term of this Contract there may be disclosed to CARRIER [(BeeMac)] confidential information concerning PLS' operations including, but not limited to, the names and addresses of Shippers and others who are clients of PLS, volumes of traffic and rate data. During the term of this Contract and for a period of one year after termination of this Contract, CARRIER hereby agrees that it will not, either directly or indirectly, solicit any individual Shipper or other client of PLS, back-solicit and/or transport for itself, without involvement of PLS, any freight that CARRIER handles pursuant to this Contract or freight which first becomes known to CARRIER as a result of CARRIER'S past, present or future dealings with PLS.
>
> . . . .
>
> 14.6 CARRIER agrees that, during the term of this Contract and for a period two (2) years after the termination of this Contract, neither CARRIER nor any of its employees, agents, independent contractors or other persons performing services for or on behalf of CARRIER in connection with CARRIER's obligations under this Contract will, directly or indirectly, hire, solicit for employment, induce or attempt to induce any employees of PLS or any of its Affiliates to leave their employment with PLS or any Affiliate for any reason.

MCSC, 8/30/10, at 9-10.

In its complaint, PLS alleged, inter alia, that BeeMac breached the terms of the MCSC by hiring four former employees and encouraging those employees to solicit PLS customers. Thus, it requested the court to preliminarily and permanently enjoin this conduct pursuant to the terms enunciated above. After a hearing on the preliminary injunction, the trial court granted PLS's request for injunctive relief based on the no-solicitation provision contained within section 14.3, but denied injunctive relief as to the no-hire provision contained within section 14.6. With regard to the no-hire provision, the trial court determined that it "exceed[ed] the necessary protection PLS needs to secure its business, and is void as a matter of public policy." Trial Court Opinion, 12/22/16, at 13. Nevertheless, it recognized that "there is no case law in Pennsylvania on the issue of no-hire restrictive covenants between contracting parties." Id. PLS filed a timely notice of appeal, and complied with the trial court's order to file a Rule 1925(b) concise statement of errors complained of on appeal.[2] The trial court authored its Rule 1925(a) opinion, and this matter is now ready for our review.[3]

_____

[2] Pursuant to Pa.R.A.P. 311(a)(4), an appeal from an interlocutory order denying a preliminary injunction may be taken as a matter of right.

[3] In its 1925(a) opinion, the trial court adopted its reasoning as set forth in its opinion and order filed December 22, 2016.

PLS presents one question for our review: "Did the [trial court] err by finding the contractual no-hire provision of the contract between PLS and Bee[M]ac to be unenforceable as a matter of law?" Appellant's brief at 4.

When reviewing an order denying a preliminary injunction, it is well settled that:

> our review of a trial courts' order granting or denying preliminary injunctive relief is highly deferential. This highly deferential standard of review states that in reviewing the grant or denial of a preliminary injunction, an appellate court is directed to examine the record to determine if there were any apparently reasonable grounds for its denial of injunctive relief where the trial court has properly found that any one of the following essential prerequisites for a preliminary injunction is not satisfied.
>
> There are six essential prerequisites that a party must establish prior to obtaining preliminary injunctive relief. The party must show: 1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; 2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; 3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; 4) that the activity that its seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; 5) that the injunction it seeks is reasonably suited to abate the offending activity; and, 6) that a preliminary injunction will not adversely affect the public interest.

Warehime v. Warehime, 860 A.2d 41, 46-47 (Pa. 2004) (cleaned up).

The trial court found that PLS was not entitled to injunctive relief with regard to BeeMac's hiring of its former employees. In so finding, the trial court recognized that this matter represented an issue of first impression in Pennsylvania. Further, it acknowledged that there was disagreement among

our sister jurisdictions. Trial Court Opinion, 12/22/16, at 13 (noting "some states have held that these types of agreements are void against public policy. Other states have held that these provisions are a permissible partial restraint of trade, and are thus not void against public policy." (comparing Heyde Companies, Inc. v. Dove Healthcare, LLC, 654 N.W.2d 830 (Wis. 2002), and VL Systems, Inc. v. Unisen, Inc., 61 Cal.Rptr.3d 818 (Cal.Ct.App. 2007), to Ex parte Howell Engineering and Surveying, Inc., 981 So.2d 413 (Ala. 2006), and H & M Commercial Driver Leasing, Inc. v. Fox Valley Containers, Inc., 805 N.E.2d 1177 (Ill. 2004)). Despite this divergence and a lack of any Pennsylvania case law on point, the trial court stated

> We believe these types of no-hire contracts should be void against public policy because they essentially force a non-compete agreement on employees of companies without their consent, or even knowledge, in some cases. We believe that if an employer wishes to limit its employees from future competition, this matter should be addressed directly between the employer and the employee, not between competing businesses. Moreover, in this case, such a restriction goes beyond the protected interest of PLS, which is its customers. So long as the former employee, or any employee of BeeMac, does not contact former customers of PLS, for the time period in the contract, in this case one year under section 14.3 of the [MCSC], there is no need to enforce the no-hire provision contained in section 14.6. For these reasons, we do not believe PLS has a substantial likelihood of success on the merits of its claim under section 14.6, and we will vacate the injunction prohibiting [BeeMac] from hiring former PLS employees.

Trial Court Opinion, 12/22/16, at 13-14. Hence, the trial court found that PLS had not established the fourth essential prerequisite necessary to justify injunctive relief, and denied its petition in that regard.

PLS contends that the trial court abused its discretion because "the contractual no-hire provision was ancillary to an arm's length transaction between sophisticated businesses, it was reasonably limited in duration and scope, and critically, was reasonably necessary for the protection of PLS'[s] legitimate business interests." Appellant's brief at 19-20. PLS's argument is multi-faceted. First, it analogizes the no-hire agreement to a non-compete agreement entered into between an employer and its employee. PLS asserts that under Pennsylvania law those agreements are prima facie enforceable if they meet certain requirements, that the contract herein satisfies those requirements, and thus, that "it is conceptually inconsistent to find no-hire provision[s] between two companies to be unenforceable as against public policy." Id. at 21. Notably, PLS alleges that, in the context of knowledge-based services such as its own business model, such an agreement is necessary to protect not only its customer base, but also its investment in the training, development, and industry-specific knowledge of its employees.

Second, PLS emphasizes the reasoning of our sister jurisdictions who have found no-hire provisions to be enforceable. Specifically, it highlights the United States District Court for the Middle District of Pennsylvania's decision in GeoDecisions v. Data Transfer Solutions, LLC, 2010 WL 5014514 (M.D. Pa. December 3, 2010), which found that the no-hire provision at issue therein

was a reasonable restraint on trade.[4]  In that decision, the district court applied Pennsylvania state law, which permits a restraint on trade if "it is ancillary to the main purpose of a lawful transaction; (2) it is necessary to protect a party's legitimate interest; (3) is supported by adequate consideration; and (4) it is reasonably limited in both time and territory." Appellant's brief at 25, citing GeoDecisions, supra at *4.  PLS contends that the no-hire provision passes this test, and thus, the trial court erred in finding it unenforceable.

After reviewing the certified record, the learned majority determined that the trial court's decision had an apparently reasonable basis.  It observed that "[t]he trial court supported its decision by examining various decisions from other jurisdictions and concluding the reasoning of those cases that disfavor such restrictions better approximate the current state of Pennsylvania law."  Majority Memorandum at 8.  In support of this conclusion, the majority reviewed case law that endorses the enforcement of reasonable no-hire provisions, see H & M, supra, and found that those provisions were tailored more narrowly than section 14.6 of the MCSC.  Further, it agreed with the trial

---

[4] Although the decisions of the federal district courts are not binding on this Court, we may "utilize the analysis in those cases to the extent we find them persuasive."  Umbelina v. Adams, 34 A.3d 151, 159 n.2 (Pa.Super. 2011) (citation omitted).

court assessment that section 14.6 "was largely superfluous in light of the non-competition clause."[5] Id. at 8-9.

The majority also agreed with the trial court's determination that the no-hire provision violated public policy since it "prevented non-signatories from exploring alternate work opportunities." Id. at 9. In this vein, it compared the no-hire provision to a restrictive covenant not to compete entered into between an employer and an employee. It found that, by its terms, the no-hire provision diminished the pool of potential employers for a PLS employee each time PLS gained a new client.[6] The majority asserted that

_____

[5] Although the majority references a "non-competition clause," I believe it is referring to the non-solicitation clause described in section 14.3 of the MCSC. The trial court analyzed that provision as a restraint on trade, as described infra, and found that it "furthered PLS's legitimate interest in preventing BeeMac from cutting PLS out of the equation." Majority Memorandum at 6, citing Trial Court Opinion, 12/22/16, at 12. I would find the trial court erred in determining that the non-solicitation clause adequately protected PLS's business interests. PLS alleged that it also had an interest in guarding the investment it made in training and developing its employees, and in safekeeping the specialized industry knowledge those employees gained while in PLS's employment. In my estimation, only the no-hire provision sufficiently safeguards this interest.

[6] In the majority writing, the majority argues that the application of provisions like section 14.6 harms PLS's employees since it results in additional restrictions on an employee's ability to obtain employment without providing adequate consideration each time PLS obtains a new client. Majority Memorandum at 9. I find this hypothetical application of the MCSC inappropriate on the record before us, as it presumes that PLS enters into similar agreements containing a no-hire provision with each new client. This presumption is not supported by the record, and further, I believe that only the validity of the no-hire provision contained within the MCSC, as it pertains to BeeMac and its affiliates who dealt with PLS, is relevant to the disposition of this matter.

such an arrangement is only permissible if it is supported by additional consideration each time the employment pool is narrowed in this way. Thus, it concluded that "[i]f the section 14.6 restriction, between companies, is allowed, then PLS would essentially be evading the requirement to pay additional consideration in exchange for additional restrictions," which, "demonstrates this aspect of [the trial court's] decision is also based on reasonable grounds." Id.

At the outset, I observe that the only prong of the preliminary injunction test outlined above at issue herein is the fourth prong, which required PLS to establish that the activity that it sought to restrain was actionable, that its right to relief was clear, and that the wrong was manifest, or, in other words, show that it was likely to prevail on the merits. Warehime, supra. Indeed, that PLS established the other five prongs is confirmed by the trial court's decision to grant PLS's motion for a preliminary injunction based on its determination that the non-solicitation provision was a reasonable restraint on trade. Trial Court Opinion, 12/22/16, at 11-12. Hence, my analysis is limited to a discussion of the fourth prong as it relates to the no-hire provision.

Instantly, PLS and BeeMac operate third-party logistics operations, and entered into a carrier-services agreement on August 30, 2010. PLS contends that the parties engaged in arm's length negotiations and exchanged valuable consideration in arriving at the agreement set forth in the MCSC. It alleged that BeeMac breached the terms of the MCSC by hiring PLS employees and

encouraging them to solicit PLS clients. As a result, PLS sought injunctive relief in order to protect its interest in its customers and its interest in the investment it made in training and developing those employees.

Undoubtedly, Pennsylvania law governs this matter. Both enterprises are organized under the laws of this Commonwealth. In addition, the MCSC entitled PLS to seek injunctive relief from a court of competent jurisdiction for violations of sections 14.3 and 14.6, and it required the terms of the agreement to be construed "in accordance with the laws of the Commonwealth of Pennsylvania." MCSC, 8/30/10, at §§ 13.1 and 24.1. Nevertheless, it is undisputed that the laws of this Commonwealth are mute regarding the enforceability of a no-hire provision, such as the condition provided in § 14.6. Under these circumstances, notwithstanding BeeMac's alleged breach, PLS could not definitively establish that it was "likely to prevail on the merits" under the laws of Pennsylvania. Warehime, supra. Simply, there is no law in Pennsylvania that directly resolves this dispute. Thus, insofar as PLS was tasked with establishing a clear likelihood of success under the laws of this state, it faced a nearly impossible task, despite otherwise proving its right to injunctive relief. I find this situation to be problematic and unfair to PLS in its endeavor to protect its legitimate business interests.

First, I disagree with the majority that the trial court's ruling "better approximate[s] the current state of Pennsylvania law," Majority Memorandum at 8, for the simple reason that there is no Pennsylvania law on point.

Although our sister jurisdictions provided a basis for treating the agreement like a non-compete agreement between an employer and employee, which the no-hire provision arguably violates, other jurisdictions consider such agreements to be restraints on trade, under which law this provision is arguably reasonable. Since Pennsylvania law does not clarify the matter, and to a certain extent, those divergent tests rely on the resolution of disputed factual matters, I believe it was inappropriate for the trial court to decide the issue, seemingly on the merits, at this juncture.

With regard to the majority's analysis, I observe that, generally speaking, Pennsylvania law favors contracts entered into at arm's length between sophisticated parties. John B. Conomos, Inc. v. Sun Co., Inc. (R&M), 831 A.2d 696, 708 (Pa.Super. 2003) (observing "[a]bsent fraud or unconscionability, courts should not set aside terms on which sophisticated parties agreed."). The record before us is devoid of allegations that PLS engaged in fraud or that the terms of the MCSC were unconscionable. Rather, the record reflects that BeeMac appreciated the consequences of entering into the MCSC with PLS, including its promise to refrain from hiring any PLS employee during the term of the contract, and for two years following its termination. Thus, in my mind, Pennsylvania law generally supports a finding that the agreement is enforceable on its face.

For similar reasons, I disagree with the majority's conclusion that the trial court had a reasonable basis for finding that the no-hire provision violated

public policy. The majority premised this conclusion on its contention that the provision was similar to a restrictive covenant between an employer and employee. Since the no-hire provision affected the rights of non-signatory third-parties without adequate consideration, it found reasonable support for concluding that it violated public policy. However, this line of reasoning falls victim to the same attack, i.e., that there is no basis in Pennsylvania law for treating a no-hire provision as a restrictive covenant between an employer and an employee.

Further, our Supreme Court has cautioned against finding a contract violates public policy unless that violation is clear:

> [p]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy . . . . Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts . . . contrary to public policy. The courts must be content to await legislative action.

Safe Auto Ins. Co. v. Oriental-Guillermo, 170 A.3d 1170, 1175 (Pa.Super. 2017) (citing Hall v. Amica Mut. Ins. Co., 648 A.2d 755, 760 (Pa. 1994)). Here, BeeMac received valuable consideration for its promise not to hire PLS employees, thereby limiting its own pool of applicants from which it could hire. Although this agreement had an indirect effect on those PLS employees seeking employment away from PLS, that effect, insofar as the MCSC is

- 12 -

concerned, prohibited those employees only from seeking employment with BeeMac and its affiliates who deal with PLS. I discern no strong public policy against such a limitation, and the dearth of Pennsylvania statutory or case law invalidating such an agreement supports the conclusion that it does not violate "dominant public policy." Id. Thus, for these additional reasons, I would not find that the trial court had "apparently reasonable grounds" for its denial of injunctive relief. Warehime, supra. Frankly, the trial court's determination cannot be apparent based on the law or record before us.

This conclusion is bolstered by the principle underlying injunctive relief. We have long held that the purpose of injunctive relief is "to prevent irreparable injury or gross injustice by preserving the status quo as it exists or as it previously existed before the acts complained of in the complaint. Ambrogi v. Reber, 932 A.2d 969, 974 (Pa.Super. 2007) (citation omitted). Here, PLS made a showing of irreparable harm caused by BeeMac allegedly hiring its former employees, which PLS trained and developed. By denying PLS's petition for injunctive relief, the trial court effectively permitted BeeMac to enjoy the benefit of its purported breach while the issue proceeded through litigation. In the interim, BeeMac is free to leverage the specialized knowledge that PLS's former employees acquired while under its employment. Even if PLS were to succeed on the merits following trial, BeeMac still gained a competitive advantage. Such an outcome fails to maintain the status quo, and falls far short of satisfying the spirit of fairness underlying the doctrine.

In a case such as this, where a disputed restraint on trade appears necessary to ensure a level playing field among direct competitors, we should aspire to maintain that equilibrium insofar as possible.

The unusual circumstances surrounding this issue lead me to believe that, when the trial court recognized this case represented a matter of first impression to which there was considerable disagreement, it had a duty to maintain the status quo, and in failing to do so, it abused its discretion.  Hence, this dissent.