Filed 9/13/21 Howroyd-Wright Employment Agency v. Springboard Solutions CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| HOWROYD-WRIGHT EMPLOYMENT AGENCY, INC., | |
| Plaintiff and Respondent, | E074188 |
| v. | (Super.Ct.No. RIC1800076) |
| SPRINGBOARD SOLUTIONS LLC, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Daniel A. Ottolia, Judge. Affirmed.

Carlsbad Law Group, David P. Hall and Vanoli V. Chander for Defendant and Appellant.

K.P. Roberts & Associates, Kenneth P. Roberts, Ryan P. Tish, and Kevin Y. Kanooni for Plaintiff and Respondent.

1

Defendant Springboard Solutions, Inc. appeals from a grant of summary judgment in favor of plaintiff AppleOne Employment Services,[1] a temporary staffing agency, in its suit for breach of contract. The dispute involves a placement fee provision in AppleOne's staffing agreement that requires Springboard to pay a set amount if it hires any of AppleOne's temporary employees or causes another staffing agency to hire them. AppleOne filed this lawsuit after Springboard caused over 30 of AppleOne's employees to transfer to a different staffing agency and refused to pay the corresponding placement fee of $308,626.

Both parties filed motions for summary judgment based on undisputed facts. AppleOne argued Springboard had breached the staffing agreement by refusing to pay the placement fee, and Springboard argued the placement fee provision is unenforceable on two independent grounds—that it is an unlawful restraint of trade under Business and Professions Code section 16600, as well as an unlawful penalty under Civil Code section 1671. The trial court denied Springboard's motion and entered summary judgment in AppleOne's favor. On appeal, Springboard reasserts its contentions that the placement fee provision is unenforceable. We disagree and affirm.

---

[1] AppleOne is the dba of Howroyd-Wright Employment Agency, Inc., the named plaintiff in this lawsuit.

2

# I

# FACTS

A.    *The Staffing Agreement and Placement Fee Provision*

Springboard is a company that provides debt solutions to individuals and businesses. In 2013, it sought AppleOne's staffing services and signed its "Conditions of Service" (the staffing agreement). The relevant provisions of that agreement are paragraphs 7 and 8.

Paragraph 7 provides: "[Springboard] understands that AppleOne employees are assigned to [Springboard] to render temporary service and, absent an agreement to the contrary, are not assigned to become employed by [Springboard]. [Springboard] acknowledges the considerable expense incurred by AppleOne to advertise, recruit, evaluate, train and quality control its employees. [Springboard] will not, *without prior written authorization by AppleOne*, hire an AppleOne employee, interfere with the employment relationship between AppleOne and its employee, *or directly or indirectly cause an AppleOne employee to transfer to another temporary help service*." (Italics added.) Under paragraph 8, Springboard agreed that if it did cause an AppleOne employee to transfer to another staffing agency, it would "pay AppleOne a fee in accordance with AppleOne's direct hire placement standard fee schedule, stipulated at 1% per $1,000 of such person's annualized wage or salary, up to a maximum fee of 30% of such person's annualized wage or salary. (By way of example, for a $21,000 annual salary, the fee would be computed as follows: 1% x 21 (the # of 1,000s in $21,000) x

$21,000 = $4,410 fee.) [SPRINGBOARD] AGREES THAT IT FULLY UNDERSTANDS THIS FEE CALCULATION AND, IF UNSURE, [SPRINGBOARD] WILL ASK APPLEONE'S REPRESENTATIVE TO EXPLAIN IT."

After Springboard signed the staffing agreement, AppleOne sent it a letter setting out its service fees for temporary employees and the direct-hire fee (in the event AppleOne wanted to employ a temporary employee on a permanent basis). The letter explained there was no direct-hire fee for temporary employees who had completed 520 hours of service at Springboard. At no point in their staffing relationship did Springboard ask for lower service rates or ask to renegotiate the terms of the staffing agreement.

On August 16, 2017, Springboard's senior vice president sent AppleOne an email entitled, "Notification of Conversions," to inform AppleOne that Springboard had signed a staffing agreement with another employment agency and that "[m]eetings will be held with [AppleOne's temporary employees] advising them they will be converted to [the] new agency or hired directly." The email contained a list of the AppleOne temporary employees who would be transferred to the new staffing agency and identified which of those employees had reached the 520-hour mark. It was clear from the email that the vice president had misunderstood the 520-hour promotion and mistakenly believed employees who had reached the 520-hour mark could be transferred to another staffing agency at no cost.

AppleOne responded the following day and informed Springboard of its three options under the staffing agreement. Springboard could (1) hire the temporary

employees directly and pay the corresponding direct-hire fee for those who had not reached the 520-hour mark; (2) release the employees from their assignment (in which case they would return to AppleOne and be placed with other clients); or (3) transfer the employees to another staffing agency and pay the corresponding placement fee, as set out in paragraph 8 of the staffing agreement. Springboard's vice president replied the next day saying she understood that the 520-hour promotion was limited to direct hire and did not include transfer.

The following month, 33 of AppleOne's temporary employees transferred to a staffing agency called G&M Hire Enterprises, LLC (@Work) and continued to work for Springboard on a temporary basis, under a contract with that agency. Springboard did not end up hiring any of these 33 employees on a permanent basis.

After the transfers, AppleOne informed Springboard that it owed $308,626 in placement fees for the 33 employees. It reached this number using the formula set out in paragraph 8 of the staffing agreement. For each employee, it multiplied their salary by the number of $1,000 in the salary and multiplied that product by .01 (1%).

B.      *AppleOne's Lawsuit and Summary Judgment*

When Springboard refused to pay the placement fee, AppleOne filed this lawsuit seeking $308,626 in damages for Springboard's breach of paragraphs 7 and 8 of the staffing agreement. As noted, both parties filed motions for summary judgment. AppleOne argued the undisputed evidence satisfied the elements for breach of contract. It submitted the staffing agreement, rates and fees letter, correspondence between the

5

parties about the transfers, and documentation of the 33 employees' salaries. It also submitted deposition testimony from Springboard's vice president in which she admitted Springboard understood the placement fee formula in paragraph 8.

In its motion, Springboard argued AppleOne could not prove a breach of contract claim because the placement fee provision was unenforceable. First, it argued the placement fee provisions was a restraint of trade and therefore void under Business and Professions Code section 16600 (section 16600). Citing *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937 (*Edwards*), Springboard argued that California employs a zero-tolerance approach to contractual agreements that restrain lawful trade, and the staffing agreement does so by "restrict[ing] an [AppleOne] employee's ability to work for another competitor." Second, Springboard asserted the placement fee provision was an unlawful penalty (or unreasonable liquidated damages clause) under Civil Code section 1671. To support this argument, Springboard submitted the declaration of Paul Zimmerman, a CPA, who opined that the provision was a penalty because it imposed a fee well beyond what AppleOne's actual damages would be were Springboard to directly hire the 33 employees. Specifically, Zimmerman concluded that AppleOne's actual damages were $0 because all of the employees who transferred to @Work had reached the 520-hour mark.

After a hearing, the trial court denied Springboard's motion and granted AppleOne's. On October 16, 2019, the trial court entered judgment in the amount of $308,626 in favor of AppleOne. Springboard timely appealed.

## II

## ANALYSIS

Springboard argues the trial court erred by rejecting its arguments that the placement fee provision is unenforceable as a matter of law, and as a result, it is entitled to summary judgment in its favor. We disagree.

A. *General Principles and Standard of Review*

A trial court properly grants summary judgment when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

The standard of review for summary judgment is well established. A moving defendant bears the initial burden to show a cause of action has no merit by establishing that one or more elements of a cause of action cannot be established or that there is a complete defense. (Code Civ. Proc., § 437c, subds. (a), (p)(2).) Once the defendant clears this hurdle, the burden shifts to the plaintiff to demonstrate a triable issue of material fact. (*Aguilar*, *supra*, 25 Cal.4th at pp. 850-851.) We independently review an order granting summary judgment, and if the issue involves a question of fact, we view the evidence in the light most favorable to the nonmoving party. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

7

B.     *Restraint of Trade*

Springboard argues the trial court erred by failing to follow *Edwards* and instead applying a reasonableness test to determine whether the placement fee provision is a void restraint of trade under section 16600. According to Springboard, the California Supreme Court abolished the reasonableness test in *Edwards*, in favor of a zero-tolerance approach to provisions like the one at issue here. Springboard is incorrect. As we'll explain, whether a provision restricting trade is invalid per se or subject to a reasonableness test depends on the type of restraint at issue.

With certain exceptions not relevant here, section 16600 provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."[2] In *Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130 (*Ixchel*), a recent case from our Supreme Court regarding "the proper standard governing alleged restraints of trade under section 16600," the court explained that although the language of section 16600 is broad and seemingly absolute, our courts have never treated it as such. (*Ixchel*, at p. 1149.) Instead, we take a dual approach, depending on whether the restraint of trade is (i) an agreement between an employer and an employee not to compete upon the termination of employment or upon the sale of interest in a business (a noncompete agreement) or (ii) an agreement between

---

[2] Section 16600 makes exceptions for certain noncompetition agreements upon the sale of goodwill or of ownership interest in a business (Bus. & Prof. Code, § 16601) and upon the dissolution or dissociation from a partnership (*Id*., § 16602) or limited liability corporation (*Id*., § 16602.5).

8

businesses to restrain certain operations or commercial dealings (a business restraint). The former are invalid per se whereas the latter are subject to a reasonableness test.

"Over time, our case law has generally invalidated agreements not to compete upon the termination of employment or upon the sale of interest in a business without inquiring into their reasonableness, while invalidating other contractual restraints on businesses operations and commercial dealings only if such restraints were unreasonable." (*Ixchel*, *supra*, 9 Cal.5th at p. 1151.) The rationale for this dual approach is to promote "'open competition and employee mobility.'" (*Id*. at p. 1158.) Taking a zero-tolerance approach to agreements retraining an individual's right to choose where they work and who they work for "ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice." (*Ibid*. [cleaned up].) "It protects the important legal right of persons to engage in businesses and occupations of their choosing." (*Ibid*. [cleaned up].)

But a zero-tolerance approach to "all contracts that limit the freedom to engage in commercial dealing" would not necessarily safeguard competition. "In certain circumstances, contractual limitations on the freedom to engage in commercial dealings can promote competition. Businesses engaged in commerce routinely employ legitimate partnership and exclusive dealing arrangements, which limit the parties' freedom to engage in commerce with third parties. Such arrangements can help businesses leverage complementary capabilities, ensure stability in supply or demand, and protect their research, development, and marketing efforts from being exploited by contractual

partners." (*Ixchel*, *supra*, 9 Cal.5th at pp. 1160-1161.) As *Ixchel* explains, our courts have "decline[d] to construe section 16600 to call such arrangements into question simply because they restrain trade in some way." (*Id*. at p. 1161.) Instead, "we have long applied a reasonableness standard to contractual restraints on business operations and commercial dealings," which "asks whether an agreement promotes or suppresses competition by considering the circumstances, details, and logic of [the] restraint." (*Id.* at p. 1159 [cleaned up].) "The reasonableness of contracts which tend to restrain trade is measured by a number of factors, including the appropriateness of the restraint to advancing the interests to be protected; the availability of less harmful alternatives; the nature of the interest interfered with; the intent of the parties or the tendency of the restraint to create a monopoly; and the social or economic justification for any monopoly, if it does result." (*Webb v. West Side District Hospital* (1983) 144 Cal.App.3d 946, 953 (*Webb*).)

In fact, *Ixchel* expressly rejected the argument Springboard makes here, that *Edwards* abolished the reasonableness standard. *Edwards* involved a standard employee noncompete agreement. (*Edwards*, *supra*, 44 Cal.4th at p. 941.) Thus, by concluding the agreement was invalid per se, "*Edwards* simply confirmed our long line of decisions interpreting section 16600 strictly in the context of noncompetition agreements following the termination of employment or the sale of interest in a business." (*Ixchel*, *supra*, 9 Cal.5th at p. 1159.) "Nothing about *Edwards* indicates a departure from that precedent to also invalidate reasonable contractual limitations on business operations and commercial dealings." (*Ibid.*)

10

Applying these principles to the case before us, we conclude the trial court was correct to apply a reasonableness test, as it cannot seriously be disputed that the placement fee provision is a contractual restraint on business operations and not a noncompete agreement restricting the right of AppleOne employees to engage in occupations of their choosing. Springboard attempts to avoid this conclusion by casting the provision as a "no-hire" clause, where one company prohibits another from hiring its employees. It argues such clauses restrict employee mobility and freedom-of-choice in a similar manner as employer-employee noncompetition agreements and as a result should be per se invalid. But no-hire clauses are not per se invalid, they are subject to a reasonableness test. (E.g., *VL Systems, Inc. v. Unisen, Inc.* (2007) 152 Cal.App.4th 708, 713-715 [concluding no-hire provision in a short-term computer consulting contract was unreasonably broad and therefore unenforceable because it applied even to employees the plaintiff had not provided to work for the defendant under the contract].) And in cases like this, where the company imposing the restraint is a staffing agency whose entire business is supplying labor to clients, placement fees protect the company "against the unfair exploitation of [its] [training and recruitment] services." (See *Webb*, *supra*, 144 Cal.App.3d at pp. 948, 953 [placement fee was reasonable because it protected the plaintiff, who operated much like a staffing agency, from exploitation and was limited to employees the plaintiff had provided to the defendant].) We therefore reject plaintiff's claim that the court erred by failing to apply an invalid-per-se rule to the placement fee provision.

11

C.    *Penalty*

Springboard argues the placement fee provision is an unenforceable penalty because the amount due in this case, $308,626, bears no reasonable relationship to AppleOne's actual damages. Again, we disagree.

Under Civil Code section 1671, "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." "A liquidated damages clause will generally be considered unreasonable," and thus an unenforceable penalty under Civil Code section 1671, if it "bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." (*Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970, 977.) "The amount set as liquidated damages 'must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained.'" (*Ibid.*)

We do not reach the second issue—whether the placement fee formula in paragraph 8 is reasonable—because we conclude the fee is not a liquidated damage covered by Civil Code section 1671. "To constitute a liquidated damage clause the conduct triggering the payment must in some manner *breach the contract*." (*Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1315; see also *McGuire v. More-Gas Investments, LLC* (2013) 220 Cal.App.4th 512, 521 ["The term 'liquidated damages' is used to indicate an amount of compensation to be paid *in the event of a*

12

*breach of contract*"], italics added.) "A contractual provision that merely provides an option of alternative performance of an obligation does not impose damages and is not subject to [Civil Code] section 1671 limitations." (*McGuire*, at p. 522.) The inquiry does not end there, however, because sometimes the option of alternative performance "is used to mask what is in reality a penalty." (*Id.* at p. 523.)

To determine whether a clause provides for alternative performance or imposes a penalty "we look to substance rather than form." (*Blank v. Borden* (1974) 11 Cal.3d 963, 970 (*Blank*).) If the contract gives the party "the power to make a realistic and rational choice in the future with respect to the subject matter of the contract," then the clause contains a valid "alternative performance." (*Id.* at p. 971.) If, however, the purported alternative "'is in fact . . . a single, definite performance with an additional charge contingent on the breach of that performance,'" the provision is a penalty. (*Id.* at p. 970.) In other words, a contract imposes a penalty if it "realistically contemplates *no element of free rational choice* on the part of the obligor insofar as his performance is concerned." (*Id.* at p. 971, italics added.)

*Blank* is instructive. There, a withdrawal provision in an exclusive-right-to-sell agreement allowed the property owner to terminate their listing agreement with the broker before its expiration so long as they paid a specified fee (6 percent of the selling price). (*Blank*, *supra*, 11 Cal.3d at pp. 966-967.) The court concluded the withdrawal provision was not a penalty or unreasonable liquidated damages clause because the 6 percent fee was not triggered by a breach of the agreement and the contract gave the

13

owner a choice between two true alternatives. "[I]f, during the term of an exclusive-right-to-sell contract, the owner changes his mind and decides that he does not wish to sell the subject property after all, he retains the power to terminate the agent's otherwise exclusive right through the payment of a sum certain set forth in the contract." (*Id.* at p. 970.)

The same is true in this case. The conduct that triggers payment of AppleOne's placement fee (here, Springboard's causing 33 AppleOne employees to switch to a different staffing agency) is not a breach of the staffing agreement. Under its plain terms, AppleOne agreed to allow Springboard to engage in such conduct and Springboard agreed to pay a fee determined by an agreed-upon formula if it chose to do so. In other words, there is no breach that triggers the placement fee. It is for this reason that the breach AppleOne alleges in its complaint is Springboard's failure to pay the agreed-upon placement fee, not its conduct in causing 33 of its employees to switch to a different staffing agency.

The cases Springboard relies on—*Greentree Financial Group, Inc. v. Execute Sports, Inc.* (2008) 163 Cal.App.4th 495, *Purcell v. Schweitzer* (2014) 224 Cal.App.4th 969, and *Vitatech International v. Sporn* (2017) 16 Cal.App.5th 796—are distinguishable because they involve true damage provisions triggered by a breach of contract, not options for alternate performance. All three cases involved settlement agreements containing a provision requiring the settling defendants to pay more than the settlement amount in the event they failed to make timely installment payments on the settlement. In

each case, the court deemed the provisions unlawful penalties because the damages due were significantly more than the total amount the defendants had agreed to pay in settlement. Perhaps if AppleOne's staffing agreement contained a clause setting out the damages for failing to pay a placement fee and those damages were more than the placement fee itself, then such a clause might constitute a penalty. But that was not the case.

Additionally, as in *Blank*, Springboard had a true choice in the matter. It could have continued to use AppleOne for its temporary staffing needs or it could have terminated the staffing agreement and hired a different staffing agency. In both of these scenarios Springboard would have incurred no placement fees. Instead, Springboard chose to work with a different staffing agency (perhaps their rates were lower) *and* bring more than 30 of AppleOne's temporary employees over to that agency. We agree with the *Blank* court when it concluded, "[w]e do not see in this arrangement the invidious qualities characteristic of a penalty or forfeiture. . . . [W]hat distinguishes th[is] case from other situations in which a form of alternative performance is used to mask what is in reality a penalty or forfeiture is the element of rational choice." (*Blank*, *supra*, 11 Cal.3d at p. 970.) Having made its choice, Springboard cannot avoid the contractual consequences of its decision by claiming the fee it agreed to is actually a penalty.[3]

---

[3] Because we conclude the placement fee is not a penalty, we need not address Springboard's contention that the trial court erred by excluding on relevance and competence grounds Mr. Zimmerman's declaration opining the fee is a penalty.

# III

## DISPOSITION

We affirm. Springboard shall bear costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH                 
J.

We concur:

MILLER
Acting P. J.

FIELDS
J.